Arnold B. **WILLIAMS**,
Plaintiff-Appellant,

v.

**EDWARD APFFELS COFFEE COMPANY, Bill Berry and J.C. Hill,**
**Defendants-Appellees.**

No. 85–6204.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1986.

Decided July 1, 1986.

Arnold B. Williams, Los Angeles, Cal., in pro per.

Barry Bartholomew, Knapp, Petersen & Clarke, Universal City, Cal., for defendants-appellees.

Before WRIGHT and NELSON, Circuit Judges, and MARQUEZ,* District Judge.

NELSON, Circuit Judge:

Arnold B. Williams appeals *pro se* from the district court's grant of summary judgment in favor of Edward Apffels Coffee Company. He contends that the district court erred in finding that: (1) no genuine issue of material fact remained as to whether Apffels had discriminated against Williams on the basis of race and age; (2) Williams had not alleged sufficient facts to state a cause of action under the California Fair Employment and Housing Act; and (3)

Williams had not alleged sufficient facts to support his action in tort for fraud and deceit. We find Williams' contentions are correct. Accordingly, we reverse the district court's grant of summary judgment, and remand for further proceedings.

## I

## FACTS

Between 1979 and 1981, Arnold B. Williams, an elderly black male, worked intermittently, for a total of twenty-two months, as a temporary or "casual" employee of the Edward Apffels Coffee Company (Apffels). Williams made oral requests to be considered for available permanent jobs on at least three occasions, and Apffels acknowledges that it regarded Williams as an applicant. In each case, Apffels hired someone other than Williams for the permanent position.

Williams' last request for permanent employment occurred when he was hired to fill in for a regular employee who was dying of cancer. Williams contends that when J.C. Hill, the plant foreman, hired Williams, Hill told Williams he would eventually be hired on a permanent basis. Williams also states that Hill demanded a kickback from Williams in exchange for the promise of permanent employment. After the regular employee died, Apffels hired someone other than Williams as a permanent replacement.

Williams filed a complaint against Apffels with the California Department of Fair Employment and Housing (DFEH), alleging discrimination on the basis of race and age. The Equal Employment Opportunity Commission (EEOC), under its work-sharing agreement with the DFEH, investigated Williams' complaint, and found insufficient evidence to sustain the discrimination charge. The DFEH then terminated its involvement with Williams' case, and referred the complaint to the EEOC, which in turn terminated its involvement in the case

* Hon. Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by designation.

and issued Williams a "Notice of Right to Sue."

Williams filed a complaint in the district court against Apffels, J.C. Hill, and Bill Berry (Apffels' former plant supervisor), alleging: (1) employment discrimination based on race and age, in violation of both 42 U.S.C. § 1981 and Cal.Gov't Code § 12920; and (2) fraud and deceit, under California tort law. Williams' subsequent motion for summary judgment was denied. Defendants then filed their own motion for summary judgment, and the district court, adopting the Magistrate's report and recommendation, granted the motion for summary judgment. Williams appeals *pro se* from that judgment.

## II

## DISCUSSION

### A. Standard of Review

A grant of summary judgment is reviewed *de novo*. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984). An appellate court's review is governed by the same standard used by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure. *Twentieth Century-Fox Film Corp. v. MCA*, 715 F.2d 1327, 1328 (9th Cir.1983). This court must first determine whether the complaint adequately states a claim upon which relief can be granted. In making that determination, the court must construe liberally the allegations of a *pro se* complainant. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Christensen v. C.I.R.*, 786 F.2d 1382, 1384 (9th Cir.1986); *Franklin*, 745 F.2d at 1235. If the complainant states a proper claim, the court must then determine whether, on the basis of the pleadings and affidavits, and viewing the facts in the light most favorable to the nonmoving party, there is any genuine issue of material fact and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984).

### B. Williams' Federal Claims

Williams, citing 42 U.S.C. § 1981, alleges that Apffels discriminated against him on the basis of race and age. Section 1981, however, redresses only discrimination based on race. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir.1986). In the federal system, age discrimination is covered under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982 & Supp.II 1984). Construing Williams' *pro se* complaint liberally, we view it as including a claim under 29 U.S.C. § 623(a)(1) (the ADEA statute prohibiting employers from failing to hire an individual because of the individual's age).[1]

Williams claims disparate treatment rather than disparate impact. Disparate treatment claims under § 1981 and the ADEA are analyzed according to the same standard used to analyze disparate treatment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982). *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 537 (9th Cir.1982) (Section 1981); *Sutton v. Atlantic Richfield Co.*, 646 F.2d 407, 411 (9th Cir.1981) (ADEA). The Title VII analysis follows three basic steps:

> [A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment is a pretext for another motive which is discriminatory.

*Lowe*, 775 F.2d at 1004–05 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973)).

---

**1.** Section 623(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

### 1. Williams' Prima Facie Case

The plaintiff in a disparate treatment case must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). A common way to establish this inference is to show that the four requirements set forth in *McDonnell Douglas* are met:

1. that the plaintiff belongs to a class protected by Title VII;

2. that the plaintiff applied and was qualified for a job for which the employer was seeking applicants;

3. that, despite being qualified, the plaintiff was rejected; and

4. that, after the plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications.

*See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Satisfaction of the *McDonnell Douglas* criteria is sufficient to establish a *prima facie* case. *Lowe*, 775 F.2d at 1005; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 2948–49, 57 L.Ed.2d 957 (1978).

Williams easily satisfies three of the four *McDonnell Douglas* requirements. First, as a black person over forty, he belongs to classes protected by Title VII and the ADEA. Second, he applied to Apffels for available permanent jobs as a "packer" and as a "mechanic."[2] Apffels concedes that Williams was qualified as a packer[3]. It appears that Williams also was qualified for the mechanic's job.[4] Third, despite being

qualified, Williams was rejected for both jobs.

The fourth *McDonnell Douglas* requirement is more troublesome, but Williams has satisfied it also. The Magistrate concluded that Williams was simply part of a pool of applicants from which Apffels chose a permanent employee, and that therefore the job did not "remain open" after Williams' rejection. However, the Supreme Court did not intend that the *McDonnell Douglas* requirements be read inflexibly; indeed, it has gone so far as to remark that the requirements are "not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

In a factual situation similar to the one here, the Court demonstrated the flexibility of the fourth requirement. Quoting the *McDonnell Douglas* language just cited, the Court in *Burdine* held that a Title VII plaintiff was able to make out a *prima facie* case by showing that she was a qualified applicant who sought an available position, even though the position was filled by a man at the moment of her rejection. *See* 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6. Williams, then, does not have to show that any discrete period of time elapsed between the moment he was rejected and the moment someone else was hired; it is enough, for purposes of the fourth *McDonnell Douglas* requirement, that the position remained open after the qualified candidate applied for the job, and that someone else was ultimately selected.

Williams has shown that: (1) the packer's job was declared open on June 26, 1981, but

---

**2.** The second *McDonnell Douglas* requirement "relates only to whether there was an opening either when the plaintiff applied or at any time [his] application was pending." *Lowe*, 775 F.2d at 1006.

**3.** Williams had performed the job for six months before the permanent position became available.

**4.** Apffels told the DFEH that the mechanic's job required "some mechanical maintenance background and experience (though such knowledge and experience must [sic] not be specifically related to the area of coffee production), and

also ... a basic understanding of electrical circuitry along with some prior experience in supervisory responsibilities." No preexisting statement of qualifications for the job was entered into evidence. Williams submitted evidence that he was qualified as a journeyman shipfitter and certified welder, and that he was trained to read blueprints and work in aircraft structure assembly. Williams also contends that during his period of employment as a packer, he performed a considerable amount of mechanical work at the Apffels plant. Apffels denies this contention.

not filled until August 10, 1981; and (2) he was considered an applicant for the job during that entire period. Thus, under *Burdine,* Williams has satisfied the fourth *McDonnell Douglas* requirement, and established a *prima facie* case.

### 2. Apffels' Articulated Nondiscriminatory Reason For Not Hiring Williams

Since Williams has established a *prima facie* case, the burden shifts to Apffels to "rebut the presumption of discrimination by producing evidence that [Williams] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. However, it is only the burden of production that shifts. The burden of persuasion never shifts from the plaintiff. Therefore, Apffels need not *persuade* the court that it was actually motivated by the proferred reason: "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254–55, 101 S.Ct. at 1094.

Apffels states that it hired someone other than Williams as a packer because the other candidate was "more qualified," and that it did not hire Williams as a mechanic because of Williams' "lack of prior job related requirements [sic]." These reasons raise a genuine issue of fact as to whether Apffels discriminated against Williams; thus, Apffels has met its burden of production under the second stage of the *McDonnell Douglas* disparate treatment analysis. However, this "serves only to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." *Lowe,* 775 F.2d at 1008.

### 3. Williams' Evidence of Apffels' Pretext

■ Williams is not required to offer additional evidence, beyond that offered to establish his *prima facie* case, in order to meet his burden at this stage. *Lowe,* 775 F.2d at 1008. He has, however, offered copies of: (1) the employment applications submitted to Apffels by the five people Apffels hired over him; and (2) Apffels' salary records for those five employees.

Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the "elusive factual question of intentional discrimination," *Burdine,* 450 U.S. at 255 n. 8 [101 S.Ct. at 1094 n. 8] ... Moreover, when a plaintiff has established a *prima facie* inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision.

*Lowe,* 775 F.2d at 1009.

The documents Williams has introduced reveal a great deal of specific factual information about the five individuals Apffels hired over Williams, including the following:

1. *J.L. Hill*: 20 years old; Caucasian; no work experience; son of J.C. Hill, the shop foreman who Williams contends demanded a kickback in exchange for a permanent job.

2. *Javier Quezeda*: 19 years old; Hispanic; one previous job as a cabinet maker; relative of Manny Lomas, an Apffels employee (step-son, according to Williams);

3. *Robert McWhorter*: 24 years old; Caucasian; one previous job in general construction, and two installing hot tubs; friend of J.C. and J.L. Hill (according to Williams);

4. *Richard Bishop*: 40 years old; Caucasian; previous experience in maintenance and installing insulation; relative of Fran Bonn, an Apffels employee;

5. *Luis Berumer*: 33 years old; Hispanic; five years' experience in shipping and receiving for a food producer; friend

of Javier Quezeda and Manny Lomas (according to Williams).

Williams contends that this information raises genuine factual questions as to whether Apffels' proffered reason for not hiring Williams is pretextual. We agree. Certainly, J.L. Hill's total lack of experience, and the limited experience of Quezeda and McWhorter, raise some question about whether Apffels' hiring decisions were, as Apffels asserts, "made on merit alone." The fact that three of the five people hired were relatives of Apffels employees raises the same question.

Viewing all the evidence in the light most favorable to Williams, and resolving all inferences in his favor, we find that Williams' considerable factual evidence raises "an indication of discriminatory motive ... [sufficient] to raise a question that can only be resolved by a factfinder." *Lowe*, 775 F.2d at 1009. By contrast, Apffels has produced scant evidence in support of its motion for summary judgment. Accordingly, we find that the district court should not have granted summary judgment to Apffels with regard to Williams' race and age claims.

*C. Williams' Claim Under the California Fair Employment and Housing Act*

■ In support of his state discrimination claim, Williams cites Cal.Gov't Code § 12920. This section states California's public policy against discrimination, as embodied in the Fair Employment and Housing Act (FEHA), Cal.Gov't Code §§ 12900–12906 (West 1980 & Supp.1983). Because Williams appeals *pro se*, we construe his complaint as including claims under Cal. Gov't Code §§ 12940 and 12941 (the FEHA provisions prohibiting employment discrimination based, respectively, on race and age).

The report and recommendation of the United States Magistrate, which the district court adopted, dismissed Williams' FEHA claim with little discussion. Referring to Williams' citation of § 12920, the report stated:

This California statute appears to be a statement of state public policy.... However, the relevancy of this statute to the case presented by the plaintiff is unclear. The statute ... is a clear preface to the institution of the State of California's Fair Employment and Housing Commission.... *Plaintiff has not, however, made reference to seeking administrative relief from this California commission.*

Report and Recommendation of the Magistrate at 6 (emphasis added).

The Magistrate evidently made no attempt to construe Williams' claim liberally in order to determine the particular FEHA provisions under which Williams' claim should have been brought. Further, the Magistrate was incorrect in stating that Williams had not made reference to seeking administrative relief from the DFEH. In his original complaint, Williams stated that he had filed a complaint with the DFEH, and that the DFEH, after investigating, terminated its involvement with Williams' case and issued a right-to-sue letter. Williams included two letters from the DFEH to support his statement. Thus, the district court never directly considered the adequacy of Williams' FEHA claim; it simply adopted the Magistrate's incorrect conclusion that, because Williams had not sought relief from the DFEH, his references to the FEHA were unimportant.

In order to establish a *prima facie* case of disparate treatment under the FEHA, the plaintiff

must first prove by a preponderance of the evidence (1) that the complainant is within the group of people for whose benefit the statute was enacted; (2) that the complainant suffered an adverse employment decision; and (3) that a causal connection exists between the complainant's protected status and the adverse action.

*DFEH v. Ambylou Enterprises, Inc.*, FEHC Dec. No. 82–06, at 5 (1982).

Williams is clearly within a protected group and has suffered an adverse employ-

ment decision. The Fair Employment and Housing Commission (FEHC) has stated that the "causal connection" requirement can be satisfied by establishing an inference of discrimination, as under the *McDonnell Douglas* standards, or by other competent evidence. *Id.* at 5–6. As discussed above, Williams has satisfied the *McDonnell Douglas* standards, and has established facts that create an inference of discrimination; he has therefore established the "causal connection" required for a *prima facie* case under the FEHA.

For the reasons discussed *supra,* in relation to Williams' federal claims, we find that a genuine issue of material fact remains regarding Williams' claim under the FEHA. Accordingly, we find that the district court should not have granted summary judgment to Apffels with regard to Williams' FEHA claim.

### D. *Williams' Tort Claim for Fraud and Deceit*

■ Williams' state tort action for fraud and deceit is based on his allegation that J.C. Hill, Apffels' shop foreman, promised Williams a permanent job in exchange for a kickback. Actual fraud is defined in Cal. Civ.Code § 1572; deceit is defined in nearly identical language in Cal.Civ.Code §§ 1709 and 1710. Of the four kinds of fraud and deceit which are similarly defined by these statutes, two are applicable to Williams' claim.

The first is commonly called "intentional misrepresentation": "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Cal.Civ. Code §§ 1572(1), 1710(1). The second is commonly called "false promise": "[a] promise, made without any intention of performing it." Cal.Civ.Code §§ 1572(4), 1710(4). A third applicable type of fraud, defined only in Cal.Civ.Code § 1572(5), includes "[a]ny other act fitted to deceive."

Under California law,
[t]he elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowl-

edge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.

. . . .

[A]lthough the mere failure to perform a promise is not a tort, . . . a statement of what the defendant or some third person *intends to do* relates to an existing state of mind, and is a representation of *fact* . . . . It is on this theory that a promise made without any intention to perform may constitute fraud: A promise to do something necessarily implies the *intention to perform,* and, where such intention is absent, there is an implied misrepresentation of fact, which is actionable fraud.

4 B.E. Witkin, *Summary of California Law* §§ 446, 453 (8th ed. 1974).

The United States Magistrate found that Williams had failed to state a tort claim because he had

neither pleaded *nor alleged* facts which would indicate that a promise was made. Plaintiff has not shown an actual agreement between defendant and plaintiff, *nor has plaintiff shown any subsequent conduct which would lead to an inference that such a promise of future employment was ever made.*

Report and Recommendation of the Magistrate at 7–8 (emphasis added).

The Magistrate's findings are incorrect. First, Williams has repeatedly alleged that a promise was made. Second, Williams has submitted evidence which would lead to an inference that the promise was made. Williams submitted the sworn affidavit of Art Ordonez, who worked in a liquor store patronized by both Williams and J.C. Hill. Ordonez stated that every Friday, which was Apffels' payday, (1) Williams came into the liquor store and purchased two fifths of Early Times whiskey; (2) Williams left the bottles with Ordonez, with instructions to give them to J.C. Hill; and (3) Ordonez kept the bottles on a shelf below the counter, and personally gave them to J.C. Hill when Hill came in and asked for them.

Viewed in the light most favorable to Williams, this evidence tends to support his allegation of a kickback arrangement between himself and J.C. Hill.

Williams has alleged facts which, if true, state an adequate claim for fraud and deceit. Hill's promise may well have been made "without any intention of performing it." If so, Hill obviously had knowledge of the statement's falsity. The only logical motive for such a promise would be to induce Williams' reliance, and Williams would be justified in relying on a promise made by Apffels' shop foreman. Williams has also clearly suffered a loss of earnings as a result of not being hired for the permanent position.

The Magistrate concluded that Williams, "[i]n response to the defendant's motion for summary judgment, ... set forth additional allegations, none of which found support in the affidavits." Report and Recommendation of the Magistrate at 8. This conclusion overlooks the affidavit of Art Ordonez, which, as discussed above, tends to support Williams' allegation of a kickback agreement between himself and J.C. Hill.

Viewing the facts in the light most favorable to Williams, we conclude that a genuine issue of fact remains regarding the existence of a fraudulent promise of employment. Accordingly, the district court should not have granted summary judgment to Apffels with regard to Williams' tort claim for fraud and deceit.

REVERSED and REMANDED.