**Andrew G. YARTZOFF,**
**Plaintiff-Appellant,**

v.

**Lee M. THOMAS,\* Administrator, U.S.**
**Environmental Protection Agency,**
**Defendant-Appellee.**

**No. 85–4073.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 3, 1986.

Decided Feb. 6, 1987.

---

\* Lee M. Thomas is substituted for William D. Ruckelshaus as the Administrator of the U.S. Environmental Protection Agency. Fed.R. App.P. 43(c).

Andrew G. Yartzoff, in pro per.

James L. Sutherland, Eugene, Or., for defendant-appellee.

Before WRIGHT, GOODWIN and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Yartzoff appeals *pro se* from the district court's grant of summary judgment in favor of the Environmental Protection Agency ("EPA") in a Title VII suit alleging discrimination on the basis of national origin and retaliation for engaging in protected activities. He contends that genuine issues of material fact remain that should preclude summary judgment. We find that no genuine issue of material fact remains with respect to his national origin claims and some of his retaliation claims and that the EPA is entitled to judgment as a matter of law on those claims. The record indicates, however, that a genuine issue exists with respect to some of his retaliation claims. Accordingly, we affirm the grant of summary judgment in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Yartzoff, of Russian origin, worked as a chemist at the EPA's research laboratory in Corvallis, Oregon, from December 1972 until December 1983. He had previously worked as a GS–11 chemist for the Food and Drug Administration in the 1960s, and he obtained a Ph.D. in chemistry in 1970. After joining the EPA at GS–7 in 1972, his position was upgraded to GS–9 in 1975. In six administrative complaints and two actions brought in district court, which form the basis of this appeal, Yartzoff alleges that the EPA made a variety of adverse employment decisions between March 1979 and February 1981 because of his Russian national origin or his pursuit of Title VII grievances.

In early March 1979, Yartzoff sent letters to his supervisors stating that his qualifications and duties justified a reclassification of his position to GS–11 or GS–12. He sent a copy of the letter to an Equal Employment Opportunity (EEO) counsellor. The supervisors treated the letters as a request for a desk audit, a procedure in which job duties are assessed before a position can be reclassified to a higher GS level, and denied the request in late March 1979. A day after the denial of this request, the EPA administered a surprise quality assurance performance test to laboratory employees, including Yartzoff.

In April 1979, the EPA received authorization to hire six chemists at GS–11 and GS–12. Yartzoff wrote to his supervisor stating that he was qualified for these positions, but others were hired.

Yartzoff filed the first of six formal complaints with the EPA's Office of Civil Rights in May 1979. During the period August 1979 to February 1980, Yartzoff's supervisors transferred several job duties away from him. At a meeting held on April 4, 1980 between Yartzoff, two of his supervisors, and an EEO counsellor to discuss his grievances, Yartzoff's request for an immediate promotion to GS–11 was denied. The civil rights office investigated his charges in mid-April. In late April, Yartzoff's supervisors gave him an employment performance rating of below average in "cooperativeness" and average in other categories.

Later that year, an EPA personnel director in Las Vegas did not approve Yartzoff's written request for a self-improvement training program to improve his English, grammar, composition, and writing. The EPA's Office of Civil Rights investigated Yartzoff's administrative complaints at the Corvallis laboratory between December 2 and December 12, 1980. On February 9, 1981, Yartzoff's supervisors transferred additional job responsibilities away from him.

After the Office of Civil Rights did not render final determinations on his complaints within 180 days, Yartzoff filed two suits in federal district court seeking injunctive relief, back pay, fringe benefits, and general and punitive damages. Adopting a magistrate's findings and recommendation, the district court granted summary judgment in favor of the EPA on all of Yartzoff's national origin and retaliation claims. It held that Yartzoff failed to establish a prima facie case and that, even if he had on some of the claims, the EPA's evidence effectively rebutted it. Yartzoff timely appealed and argues that genuine issues of material fact exist that should preclude summary judgment. This court has jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

This court reviews the district court's grant of summary judgment de novo. *Williams v. Edward Apffels Coffee Co.,* 792 F.2d 1482, 1484 (9th Cir.1986). We must determine whether, viewing the evidence and the inferences from that evidence in the light most favorable to the nonmoving party, there remains any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472, 1477 (9th Cir.1986); *Williams,* 792 F.2d at 1484; Fed.R.Civ.P. 56(c).

■ At the outset, we note that Yartzoff's argument that *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), provides an unqualified right to trial is mistaken. *Chandler* established that federal employees have the same right to de novo review of Title VII claims in district court that state and private-sector employees have. Yartzoff exercised this right by filing suit in federal district court. Once there, summary judgment rules apply. *Nolan v. Cleland,* 686 F.2d 806, 811 (9th Cir.1982).

### A. National Origin Claims

Yartzoff alleges that the EPA discriminated against him on the basis of his Russian national origin under 42 U.S.C. § 2000e–2(a) (1982). His complaint states

claims for disparate treatment, not disparate impact. The Title VII analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), follows three steps:

[A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia,* 775 F.2d 998, 1005 (9th Cir.1985), *amended,* 784 F.2d 1407 (9th Cir.1986).

To establish a prima facie case of disparate treatment, the plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). A common way to establish this inference is to show that the four factors set forth in *McDonnell Douglas* are present: (1) the plaintiff belongs to a class protected by Title VII, (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) the plaintiff, despite being qualified, was rejected, and (4) after the plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications. Satisfaction of these criteria is sufficient to establish a prima facie case. *Williams,* 792 F.2d at 1485; *Lowe,* 775 F.2d at 1005. But failure to allege "specific facts" sufficient to establish the existence of a prima facie case renders a grant of summary judgment appropriate. *Palmer v. United States,* 794 F.2d 534, 536–39 (9th Cir.1986); *see Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e).

■ Each of Yartzoff's five allegations of national origin discrimination fails because there is insufficient evidence to establish a prima facie case. The parties agree that Yartzoff falls within a class protected by Title VII. The claim based on his supervisor's refusal to perform a desk audit in March 1979, however, overlooks the fact that the EPA was then carrying out a reduction-in-force program. The program, announced in July 1978, imposed a freeze on promotions between February and July 1979. The second element of a prima facie case is absent because the EPA neither sought applicants nor was able to give promotions. *See Palmer,* 794 F.2d at 537–38.

■ The two claims concerning the EPA's failure to hire Yartzoff for one of the six openings in April 1979 and its refusal to promote him in April 1980 both fail for the same reason. Whether or not we agree with the district court's assessment that Yartzoff had not produced sufficient evidence on which a factfinder could infer that he was qualified for the positions he sought, Yartzoff admits that he failed to complete applications and otherwise comply with proper hiring and reclassification procedures. In unusual circumstances, failure to apply for a position may not vitiate a Title VII action. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 367–68, 97 S.Ct. 1843, 1870–71, 52 L.Ed.2d 396 (1977) (holding that a nonapplicant may pursue a Title VII action on a showing that he was deterred from applying by the employer's discriminatory practices). The record in this case, however, to say the least, does not show that Yartzoff was discouraged from applying. He simply failed to do so.

The claim concerning the denial of Yartzoff's request for a self-improvement training program fails because the Las Vegas personnel director lacked authority to implement unilaterally such a program. A prima facie case in this setting should include evidence that the employer's agent was in fact authorized to grant the request. Although the personnel director informed Yartzoff that a training program had to be developed by Yartzoff and his supervisor,

Yartzoff did not further pursue an attempt to arrange one of the programs available at Corvallis.

Finally, Yartzoff's claim that the EPA's Office of Civil Rights delayed acting on his complaints because of ethnic animus is meritless. The record shows that the office had a substantial backlog of cases to handle, and Yartzoff did not allege that his legal rights were prejudiced in any way by the timing of the administrative determinations. When the agency did not act within 180 days, Yartzoff availed himself of his statutory right to file suit in district court. *See* 42 U.S.C. § 2000e–16(c) (1982). On these pleadings, we hold that Yartzoff failed to state a claim.

■ The district court also correctly disposed of the national origin claims if construed to advance a disparate impact theory. The complaint does not allege that otherwise neutral practices of the EPA had a substantial, adverse impact on a group protected by Title VII. *See Lowe,* 775 F.2d at 1004. Even if the *pro se* complaint is construed liberally to state a claim under a disparate impact theory, the record does not contain evidence of a substantial, adverse impact sufficient to survive summary judgment. Therefore, the EPA was entitled to summary judgment on all of the national origin claims.

### B. Retaliation Claims

Yartzoff also alleges that the EPA unlawfully discriminated against him because of actions he took to enforce rights protected under Title VII. *See* 42 U.S.C. § 2000e–3(a) (1982). The *McDonnell Douglas* order and allocation of proof that governs disparate treatment claims also governs retaliation claims. *See Ruggles v. California Polytechnic State Univ.,* 797 F.2d 782, 784 (9th Cir.1986); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 730 (9th Cir.1986).

### 1. Yartzoff's Prima Facie Case

A plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Ruggles,* 797 F.2d at 785; *Miller,* 797 F.2d at 731; *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982). At the summary judgment stage, the prima facie case need not be proved by a preponderance of the evidence. *Miller,* 797 F.2d at 731.

■ We agree with the district court that Yartzoff failed to establish a prima facie case on three of the retaliation claims. Whether or not Yartzoff's letter-writing campaign in March 1979 constituted a protected activity under Title VII, he failed to show the necessary causal link with respect to the March 1979 surprise quality assurance test. The record clearly shows that the decision to administer the tests was made in January and February 1979, prior to the beginning of Yartzoff's letter-writing campaign. *See Miller,* 797 F.2d at 731 n. 1 (noting that an employer's decision on a course of action made prior to learning of the employee's protected activity does not give rise to an inference of causation). The record also fails to show a causal link with respect to the denial of Yartzoff's request for a promotion in April 1980 because, as discussed above, he failed to follow proper application procedures. Absent a proper application, he could not be promoted. Finally, the charge that the civil rights office delayed prosecuting Yartzoff's complaints in retaliation for filing the complaints is meritless.

■ We disagree with the district court's conclusion, however, that Yartzoff failed to present evidence sufficient to establish a prima facie case on the other retaliation claims: the transfer of various job duties from Yartzoff between August 1979 and February 1980, the issuance of a subaverage performance rating in April 1980, and the transfer of additional job duties in February 1981. The first two elements of the prima facie case are clearly met. Yartzoff engaged in protected activity by filing Title VII grievances beginning in May 1979 and

by cooperating in investigations. *See* 42 U.S.C. § 2000e–3(a) (1982). Transfers of job duties and undeserved performance ratings, if proven, would constitute "adverse employment decisions" cognizable under this section. *B. Schlei & P. Grossman, Employment Discrimination Law* 554 (2d ed. 1983); *id.* at 105–06 (Cum.Supp.1983–1984).

Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *Miller,* 797 F.2d at 731–32. In this case, the record contains evidence that Yartzoff's supervisors were aware of his Title VII complaints and of his participation in administrative investigations. *See id.; Cohen,* 686 F.2d at 796 (stating that an employer's awareness is essential to showing a causal link).

Proximity in time is apparent on the record: the transfers of job duties and the sub-average performance rating all occurred during the pendency of the administrative complaints and investigations. This inference of a causal link is strengthened by the closeness in time between particular events. *See B. Schlei & P. Grossman, supra,* at 559 & n. 145 (2d ed. 1983). The first series of transfers of job duties between August 1979 and February 1980 began less than three months after he filed his first administrative complaint. *See Hochstadt v. Worcester Found. for Experimental Biology, Inc.,* 425 F.Supp. 318, 324–25 (D.Mass.) (holding that discharge six months after EEOC settlement and a month after an informal complaint satisfies causation requirement), *aff'd,* 545 F.2d 222 (1st Cir.1976). The supervisors issued the sub-average performance rating in late April 1980, approximately three weeks after Yartzoff, the supervisors, and the EEO counsellor met to discuss the complaints on April 4, 1980, and two weeks after the civil rights office investigated the charges in mid-April. Additional job duties were transferred away from Yartzoff in Febru-

ary 9, 1981, less than two months after the civil rights office finished investigating his charges at Corvallis on December 12, 1980. *See Miller,* 797 F.2d at 731–32 (holding that an employer's knowledge of protected activity and the discharge of employees less than two months after negotiation of EEOC settlement agreements was sufficiently probative of a causal link to withstand summary judgment). Thus, Yartzoff set forth sufficient evidence on which to establish a prima facie case on these claims.

### 2. The EPA's Articulated Nonretaliatory Reasons for Its Adverse Employment Decisions

In Title VII retaliation cases, once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for its decisions. *Miller,* 797 F.2d at 731. Only the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Cohen,* 686 F.2d at 796–97. The employer need not persuade the court that it was actually motivated by the proffered reasons: "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Thus, the EPA " 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.' " *Miller,* 797 F.2d at 731 (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096).

■ We agree with the district court that the EPA met its burden of articulating legitimate, nonretaliatory reasons for its employment decisions regarding Yartzoff. The EPA presented evidence that the transfers of job duties were related to agency reorganization plans, budget cuts, and the inability of staff members to fulfill necessary duties, and that the issuance of the

sub-average performance rating for "cooperativeness" was based on incidents allegedly showing that Yartzoff was uncooperative. These explanations raise a genuine issue of fact as to whether the EPA retaliated against Yartzoff.

### 3. Yartzoff's Evidence of the EPA's Pretext

If the defendant carries the burden of satisfactorily articulating a legitimate, nonretaliatory reason at trial, the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away. *See Burdine*, 450 U.S. at 255 & n. 10, 101 S.Ct. at 1095 & n. 10. The burden of production shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation. This burden thus merges with the plaintiff's ultimate burden of persuading the court that he is the victim of retaliation. *See id.* at 256, 101 S.Ct. at 1095. The plaintiff may succeed "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Evidence already introduced to establish the prima facie case may be considered, and "[i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10; *accord Miller*, 797 F.2d at 732; *Williams*, 792 F.2d at 1486; *Lowe*, 775 F.2d at 1008. Accordingly, this court has observed that a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the " 'elusive factual question' " of intentional discrimination. *Miller*, 797 F.2d at 732–33 (quoting *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8); *Lowe*, 775 F.2d at 1009, *as amended*, 784 F.2d at 1407; *see Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011–12 (9th Cir.1986); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983).

In this case, we need not rely solely on the evidence presented in support of the prima facie case because other evidence also tends to show the existence of a genuine issue as to whether the proffered explanations are pretextual. In particular, Yartzoff introduced evidence that for years prior to the filing of his complaints, he had always received performance ratings of average and above average on all employment indices. Following the filing of his administrative complaints and his April 1980 meeting with his supervisor to discuss his Title VII grievances, however, he received a sub-average rating for cooperativeness for the first time. Although the EPA introduced affidavits of co-workers attesting to Yartzoff's alleged uncooperative behavior, Yartzoff should be afforded an opportunity to cross-examine these individuals and allow the factfinder to weigh the evidence to determine whether the allegations of uncooperativeness were justified. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

Furthermore, evidence in the record raises questions about whether Yartzoff's supervisors harassed and closely watched him during the period in question. If proven at trial, such incidents would bear on the pretext issue. *See B. Schlei & P. Grossman, supra*, at 559 (2d ed. 1983) (noting that surveillance "strongly suggests the possibility of a search for a pretextual basis for discipline, which in turn suggests that subsequent discipline was for purposes of retaliation"). Finally, we believe that the fact that Yartzoff experienced not one, but a series of adverse employment decisions during a two-year period is itself probative of pretext and thus of the "elusive factual question" of intentional discrimination on the individual counts. Therefore, summary judgment on these counts was inappropriate.

Our holding that summary judgment was inappropriate on some of the retaliation claims, however, should not embolden Yartzoff in his hopes of ultimately succeeding

at trial. In the face of strong evidence presented by the EPA showing legitimate reasons for its actions, Yartzoff's evidence appears weak. His claims taken as a whole contain many indicia of spuriousness, and he should be cautioned by the costs of litigation. If his proof fails to sustain the claim of retaliatory employment practices, he may well suffer judgment for defense costs and attorneys' fees. The trier of fact could find that the case was brought in bad faith to harass the defendant.

## CONCLUSION

Summary judgment on the disparate treatment claims, and on some of the retaliation claims, was appropriate because Yartzoff failed to establish a prima facie case. On other retaliation counts, Yartzoff presented evidence sufficient to establish a prima facie case and to raise a reasonable inference that the EPA's proffered explanations may have been pretextual. Therefore, the decision of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion. Any future appeals in this case will be returned to this panel.