24 F.3d 247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Lucien LOISEAU, Plaintiff-Appellant,
v.
DEPARTMENT OF HUMAN RESOURCES Of the STATE OF OREGON; Roger
Zwemke, individually and in his capacity as Branch Manager
of the Northeast Branch, Adult and Family Services Division;
Jean Stryker, individually and in her capacity as Branch
Manager of the East Branch, Adult and Family Services
Division; Karen Nettler, individually and in her capacity
as Branch Manager of the East Branch, Adult and Family
Services Division, Defendants-Appellees.
 No. 92-36822.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 4, 1994.
Decided April 29, 1994.
 
 Before: POOLE and TROTT, Circuit Judges, and KING,* District Judge.
 MEMORANDUM**
 Lucien Loiseau, a former supervisor with the State Adult and Family Services Division ("AFSD") of the Oregon Department of Human Resources, appeals the district court's summary judgment in favor of his employer in Loiseau's action under 42 U.S.C. Secs. 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. We review de novo, Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990), and we reverse.
 * Loiseau, who is a black, naturalized United States citizen originally from the West Indies, began working as a welfare assistance worker for AFSD in January 1974. In 1981, he filed a Title VII and civil rights action against AFSD, alleging that he was not promoted because of his national origin and prior civil rights complaints. Loiseau v. Department of Human Resources, 567 F.Supp. 1211, 1213, 1219-21 (D.Or.1983).[1] The district court held that Loiseau's employer had discriminated against him in violation of Title VII. Id. at 1221. Loiseau subsequently was promoted to the position of a Welfare Assistance Supervisor.
 By 1987, Loiseau worked at AFSD's North Portland Branch, where his supervisor was defendant Roger Zwemke. On February 1, 1989, Loiseau was transferred, following his request, to AFSD's East Portland Branch, where his supervisor was defendant Jean Stryker.
 Loiseau left on medical leave in July 1989. Before he left, he received two evaluations: one prepared by Zwemke in April 1989 for the period June 1, 1988 to February 1, 1989, and one prepared by Stryker in May 1989 for the period June 1, 1988 to June 1, 1989. Zwemke's evaluation contained a narrative evaluation and number grades on a scale of 1 to 5, which were mostly 1's ("needs improvement") and a few 2's ("satisfactory"). The narrative stated that Loiseau was well-liked by his staff, caring, personable, accommodating, and hardworking, but concluded that Loiseau needed improvement as a supervisor in specific areas such as organization, delegation to and training of staff, computer expertise, record keeping and organization, and preparedness for welfare hearings. Stryker's evaluation apparently was based on Zwemke's evaluation and contained numbers that were virtually identical to Zwemke's.
 On July 2, 1990, Loiseau returned to work at the East Branch, where he was supervised by Karen Nettler. Nettler assigned him to training from July 3 to July 27, 1990. In July 1990, Stryker issued a reprimand for behavior that occurred before Loiseau's medical leave. On September 20, 1990, Stryker prepared an evaluation of Loiseau for the period June 1, 1989 to August 1, 1990 with number grades that were mostly 0's ("unsatisfactory") and a few 1's ("needs improvement"). The evaluation identifies Loiseau's performance goal for the next evaluation period ending June 1, 1991: "[s]how improvement in basic supervisory skills in planning, communication, leadership, interpersonal working relationships and application of technical/program knowledge skills." The evaluation contains an attachment which identifies four areas of management deficiencies that formed the basis for the evaluation and the July 1990 reprimand: unsatisfactory organizational skills, unsatisfactory communication skills, unsatisfactory policy program and procedure skills, and poor supervisory behavior.[2] The attachment also states that "[t]o provide opportunity for corrections and improvement by Mr. Loiseau, he has received written expectations and his performance will continue to be monitored."
 On September 26, 1990, Otis Hayes, who represented the employees in Loiseau's unit, spoke to Nettler about the concerns Loiseau's employees had with Loiseau's performance. Hayes and Nettler met with Loiseau about his unit's concerns on October 1, 1990. On October 12, 1990, AFSD sent Loiseau an eight-page notice detailing its dissatisfaction with Loiseau as a manager and relieving him of his management responsibilities.
 Loiseau submitted his resignation on January 17, 1991. Within 90 days after the EEOC issued a right to sue letter, Loiseau filed this action. The defendants moved for summary judgment, and in response, Loiseau submitted evidence, which is discussed below, of retaliatory and discriminatory behavior by Zwemke, Stryker, and Nettler. The district court granted summary judgment in favor of the defendants, and Loiseau timely appealed.
 II
 Loiseau contends that the district court erred by granting summary judgment in favor of the defendants on his claim that his supervisors demoted him because he had filed civil rights complaints and because he is black. The district court granted summary judgment on the ground that Loiseau did not establish a prima facie case of a Title VII violation or establish a genuine issue of material fact that his employer's legitimate reasons for discharge were pretextual.[3]
 Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee for engaging in a protected activity such as filing charges of discrimination. 42 U.S.C. Sec. 2000e-3. Title VII also prohibits an employer from discriminating against an employee based on race. 42 U.S.C. Sec. 2000e-2(a)(1).
 Under Title VII, the plaintiff bears the initial burden of establishing a prima facie case of retaliation or discrimination, thereby creating a rebuttable presumption of retaliation or discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (discrimination); Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir.1987) (retaliation). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to rebut the presumption by articulating a legitimate explanation for its employment decision. Burdine, 450 U.S. at 253. If the employer meets its burden of articulating a legitimate reason, the mandatory inference of retaliation or discrimination arising from the plaintiff's prima facie case is lost, and the burden of production shifts back to the plaintiff to show that the explanation is a pretext for the retaliation or discrimination. Id. at 255-56. The ultimate burden of persuasion remains with the plaintiff. Id. at 253. Thus, the plaintiff must prove ultimately that his employer intentionally retaliated or discriminated against him. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749-56 (1993) (after employer shows legitimate reason, plaintiff must have a "full and fair opportunity to demonstrate" that the reason was pretextual and that the true reason for the employer's action was retaliation or discrimination).
 In the context of a summary judgment motion, the shifting burdens of production must be viewed in light of the traditional test for granting summary judgment. Foster v. Arcata Assoc., 772 F.2d 1453, 1459 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986). The plaintiff must establish a prima facie case and, once the employer articulates a legitimate reason for its actions, raise a genuine factual issue as to whether the articulated reason is pretextual. See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1110 (9th Cir.1991).
 Title VII claims, however, address an employer's alleged intentional misconduct. Because intentional misconduct is a "pure question of fact," this court requires very little evidence to survive summary judgment, even when the employer has articulated a legitimate reason for its conduct. Id. at 1111; see Yartzoff, 809 F.2d at 1377 (summary judgment should be used sparingly in Title VII cases because intentional discrimination is an elusive factual determination and because cross-examination can be valuable in ferreting out hidden motives).
 A. Retaliation
 To set forth a prima facie case of unlawful retaliation, the plaintiff must demonstrate that (1) he engaged in protected activity, (2) he suffered an adverse employment decision, and (3) a causal link existed between his protected activity and the adverse employment decision. Yartzoff, 809 F.2d at 1375.
 Here, it is not disputed that Loiseau engaged in a protected activity by filing his prior civil rights action in federal district court in 1981 and by filing civil rights complaints with the Bureau of Labor and Industries in 1987, 1988, and 1989. It also is undisputed that Loiseau was demoted. The only issue is whether there is a causal link between the two.
 To establish a causal link, the plaintiff must present sufficient evidence to raise the inference that the protected activity was the likely reason for the adverse action. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982). For example, a causal link may be inferred from circumstantial evidence that the employer knew that the plaintiff engaged in the protected activity and from a closeness in time between the protected activity and the adverse employment action. Yartzoff, 809 F.2d at 1376.
 Here, Loiseau proferred evidence that his supervisors knew about his prior law suit, various complaints to the Oregon Bureau of Labor and Industries, and internal agency complaint. Zwemke, Loiseau's supervisor at AFSD's North Portland branch, knew about Loiseau's 1981 law suit and commented that he won it not because he was discriminated against but because AFSD did not employ many blacks. Zwemke also commented that he was not pleased when Loiseau filed an internal agency complaint about a prior negative evaluation. Stryker, Loiseau's supervisor at the East Portland Branch, also knew about his suit and told him that no one else would accept Loiseau as a transfer because he had filed a suit. Loiseau also told Stryker that he was going to file a complaint about his unfavorable 1989 evaluation. The supervisors' knowledge of and, arguably, hostility toward the complaints supports an inference that the demotion was linked to the protected activity.
 Loiseau also proferred evidence that his employer treated him more hostilely than other employees. Zwemke treated him more coldly and with less respect than he treated other employees, publicly humiliated him and didn't publicly humiliate other employees, required him to work longer than other employees, and generally harassed him. Zwemke also undermined his authority, failed to recognize Loiseau's contributions, and failed to account for problems in the workplace such as excessive workloads in evaluating Loiseau. Stryker allowed Loiseau's employees to gripe to her directly, failed to give him the support he needed to do his job properly, overscrutinized his work, and treated other supervisors better than she treated him. After Loiseau returned from a year of medical leave, Nettler assigned another employee to follow and monitor Loiseau, and no other employees were treated this way.
 An inference of hostility toward Loiseau also can be drawn from the events surrounding his performance evaluation after he completed his medical leave. Before his medical leave, Loiseau received two performance evaluations with mostly 1's ("needs improvement") and a few 2's ("satisfactory"). After his 1989 annual evaluation, Loiseau worked one month, left on medical leave in July 1989, returned to work on July 3, 1990, and worked for one month, which he spent entirely in training. He then received another annual evaluation for the period June 1, 1989 to August 1, 1990 in which he received mostly O's ("unsatisfactory") and a few 1's ("needs improvement"). This much-more-negative evaluation, covering the year Loiseau spent on medical leave and one month of work after Loiseau returned from medical leave, seems odd, especially given that Loiseau spent the entire month in training. Moreover, it was prepared by Stryker rather than Nettler, Loiseau's new supervisor. It also is odd that Loiseau was issued a letter of reprimand in July 1990 for behavior that occurred before Loiseau's medical leave. Stryker's explanation--that she was unable to give it to Loiseau because he was on medical leave--is plausible, except that the reprimand was dated in July 1990 and thus was not prepared contemporaneously with the events giving rise to it.
 Finally, retaliation can be inferred from Loiseau's rapid demotion after he returned to work in July 1990. He received a month's training in July. As of August 1, 1990 (by evaluation dated September 18, 1990), he received an evaluation that was more negative than his previous evaluations and that covered only the period of time he spent in training. At the beginning of October, he was demoted. A reasonable inference is that his employer was out to demote him as soon as he returned to work.
 Loiseau establishes a prima facie case under this circuit's lenient summary judgment standard for Title VII cases. See Sischo-Nownejad, 934 F.2d at 1111.
 Of course, Loiseau's employer articulated a legitimate reason for the demotion: Loiseau was a bad supervisor. But, arguably, the chronology of events surrounding Loiseau's post-medical leave performance evaluations, especially his receipt of a negative evaluation based only on a month where he was being retrained, raises a genuine issue of fact that the evaluations were pretextual. Again, given the difficulties of addressing claims of an employer's intentional misconduct on summary judgment, the evidence proferred by Loiseau was sufficient to withstand the defendants' summary judgment motion. See id.
 B. Race Discrimination
 To establish a prima facie case of race discrimination under Title VII, a plaintiff must introduce evidence that gives rise to an inference of unlawful discrimination based on race. Id. at 1110. When, as here, there is no direct evidence of the employer's intent to discriminate, a minority plaintiff establishes a prima facie case based on disparate treatment by demonstrating that he was treated less favorably than other similarly situated non-minority employees. See id. at 1112; Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982).
 In support of his claim of race discrimination, Loiseau proferred the same pattern of hostility that he proferred in support of his claim of retaliation. In addition, he stated in his affidavit that similarly situated white supervisors were treated better than he was treated. This pattern of hostility together with different treatment of white supervisors establishes a prima facie case of discrimination. And although Loiseau's employer proferred evidence that it demoted Loiseau because he was a bad supervisor, the rapid production of negative evaluations before Loiseau's demotion raises a genuine issue of fact that the evaluations were pretextual. We conclude that summary judgment also was improper on the discrimination claim.
 III
 Because we hold that the district court erred by granting summary judgment in favor of the defendants on Loiseau's Title VII claims, we also hold that it erred by granting summary judgment in favor of the defendants on Loiseau's civil rights claims. See Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 472 n. 14 (9th Cir.1991); Sischo-Nownejad, 934 F.2d at 1112-13.
 The defendants argue that the statute of limitations bars recovery on some of the conduct challenged by Loiseau. See Wilson v. Garcia, 471 U.S. 261 (1985); Davis v. Harvey, 789 F.2d 1332, 1333 (9th Cir.1986); Or.Rev.Stat. Sec. 12.110(1) (two-year statute of limitations). The conduct giving rise to Loiseau's action, however, was his demotion in October 1990, which occurred less than two years before he filed this action on October 28, 1991. Loiseau did not have a cause of action before the demotion. Moreover, many of the defendants' allegedly hostile acts occurred within two years prior to the date Loiseau filed this action. Finally, the prior discriminatory acts arguably were part of a continuing pattern of harassment, and the statute of limitations probably should not preclude Loiseau from proferring them as evidence in support of his claim that the demotion violated his civil rights.[4]
 The defendants correctly argue that the eleventh amendment bars Loiseau's civil rights claims against the state. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-70 (1989). Loiseau may, however, sue his supervisors in their official capacities for prospective injunctive relief, id. at 71 n. 10, and in their individual capacities for damages. See Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1990), cert. denied, 112 S.Ct. 436 (1991).
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We reject the appellees' argument that we should not consider this opinion because it was not part of the record below. The opinion was cited in Loiseau's amended complaint, and the district court referred to it in its written decision in this case. Moreover, courts may take judicial notice of prior related proceedings. See, e.g., United States ex rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992)
 
 
 [2]
 In its opinion, the district court states that these four areas were identified in the annual performance review for the period ending June 1989. This statement is incorrect. The record contains only one written memorialization of these four areas, which is the attachment to Stryker's September 18, 1990 evaluation for the period June 1, 1989 to July 1, 1990
 
 
 [3]
 Although the district court concluded, as a basis for its summary judgment, that Loiseau did not establish a prima facie claim, it also discussed how Loiseau had not satisfied his burden of showing pretext
 
 
 [4]
 In any event, the district court did not address the statute of limitations argument. On remand, the district cout can consider whether acts falling outside the two-year period were part of a continuing pattern of harassment