108 F.3d 1384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edward G. CHINNETH, Plaintiff-Appellant,
v.
AMERICAN RED CROSS, Defendant-Appellee.
 No. 95-36264.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1997.
Decided March 11, 1997.
 
 Before: WRIGHT, WALLACE and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Edward G. Chinneth appeals the grant of summary judgment in favor of American Red Cross in this Title VII action. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Chinneth, who is of African-American/Japanese ancestry, is a former Station Manager at Camp Zama, Japan, part of the Red Cross's Service to Armed Forces ("SAF") branch. In July 1992, he filed a complaint with the Red Cross's EEO, contending that his supervisor, Eugene Burke, had attempted to terminate his employment without following Red Cross's "progressive discipline" policies. He stated that Burke's conduct had "many parallels to injustices that were racially motivated." An investigation revealed that Burke had failed to follow the proper procedures.
 
 
 4
 Faced with military reductions, increased automation, budget cuts and increased costs, the Red Cross in July 1993 began decreasing its SAF services abroad, including the elimination of 56 Station Managers and Assistant Station Managers. To facilitate the staff reduction, the Red Cross accelerated the assignment expiration dates of mobile SAF staff who had been overseas for more than five years. They were notified that their assignments would end in June 1994, and were given the option of resigning and receiving a severance package or applying for a stateside position.[1] Chinneth was among those notified. Without applying for any stateside positions, he gave a letter of resignation in May 1994.
 
 
 5
 He sued the Red Cross, asserting claims for retaliation and retaliatory discharge in violation of Title VII's "opposition clause," 42 U.S.C. § 2000e-3(a), and breach of contract. The district court granted summary judgment in favor of the Red Cross on each. Chinneth timely appeals only the retaliation claim, contending that the Red Cross retaliated against him for filing the complaint against Burke by giving him a "provisional" rating on his July 1, 1992 to June 30, 1993 work performance evaluation.[2]
 
 II
 
 6
 We review de novo the grant of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We may affirm on any basis supported by the record. McClure v. Life Ins. Co. of North America, 84 F.3d 1129, 1133 (9th Cir.1996). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197.
 
 
 7
 The allocation of the burdens of proof and production and the order of presentation in a Title VII retaliation action are well settled:
 
 
 8
 [The] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 9
 Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994) (citation omitted).
 
 
 10
 To establish a prima facie case of retaliation, a plaintiff must show that:
 
 
 11
 (1) he was engaged in a protected activity;
 
 
 12
 (2) he was thereafter subjected by his employer to an adverse employment action; and
 
 
 13
 (3) a causal link exists between the protected activity and the adverse employment action.
 
 
 14
 Id. at 891 (citing Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir.1987)).
 
 The Provisional Rating
 
 15
 In light of Chinneth's complaint, the Red Cross chose not to have Burke make his evaluation as scheduled in December 1992. Because he felt that Burke would not be fair to him, Chinneth declined to be reviewed in March 1993. Richard Sanders, who replaced Burke as Chinneth's supervisor, finally prepared Chinneth's evaluation for July 1, 1992 to June 30, 1993. Using a four-category rating system then in use, he rated Chinneth "fully successful." Kay Walton, Sanders' immediate superior, converted Chinneth's evaluation (and all others prepared under the old system) to the newly adopted five-category rating system, resulting in a "provisional" rating.
 
 
 16
 Chinneth contends that his performance evaluation was retaliatory. We conclude that Chinneth failed to establish a prima facie case.
 
 
 17
 Initially, we are not prepared to conclude that the absence of a favorable rating (as opposed to the receipt of an unfavorable rating) during 1992 constitutes adverse employment action as Chinneth appears to contend. See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 n. 6 (9th Cir.1994) (transfer from night to day shift "barely--if at all--characterizable as 'adverse' employment action" when it did not involve a demotion, a worse job or any additional responsibilities), cert. denied, 115 S.Ct. 733 (1995). Chinneth produced no evidence of harm from the failure to provide the performance review.
 
 
 18
 As in Steiner, the record indicates clearly that the Red Cross's failure to provide the evaluation was remedial, not retaliatory. See id. at 1465. Burke was then still Chinneth's supervisor and in light of the complaint, the Red Cross sought to avoid additional conflict between the two.
 
 
 19
 Nor has Chinneth established that his eventual receipt of the provisional rating was adverse employment action. The record does not support his contention that it prevented him from obtaining another position within the Red Cross. In a letter on March 28, 1994, Walton told Chinneth that he could either resign or apply for a stateside position. Sanders reiterated these options in a letter of April 25, 1994. It is undisputed that at these times Chinneth's rating had increased to "commendable" and that, instead of applying for a stateside position, he elected to resign.[3] He produced no evidence of harm from his performance evaluation.
 
 
 20
 This repeated encouragement to apply for stateside positions leads us to reject also the contention that this case falls within the "unusual circumstances" in which failure to apply for a position does not vitiate a Title VII action when the employer's discriminatory practices deterred the employee from applying. Yartzoff v. Thomas, 809 F.2d at 1374. Summary judgment was appropriate.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Red Cross requires employees stationed overseas for more than five years to rotate through a stateside position
 
 
 [2]
 We note that Chinneth's assertions that the Red Cross failed to provide him with a favorable rating, and provided him with what he perceives to be an unfavorable rating are merely different sides of the same coin. Further, we decline to address his argument that the Red Cross's failure to reevaluate him within 90 days was retaliatory because the record contains no evidence that the Red Cross had a policy requiring such reevaluation
 
 
 [3]
 The Red Cross placed all "commendable" staff who applied