671 F.2d 360
 28 Fair Empl.Prac.Cas. 904,
28 Empl. Prac. Dec. P 32,606
George Ann MUNTIN, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA PARKS AND RECREATION DEPARTMENT, Harry
Dring, individually and in his capacity as
District Superintendant, et al.,
Defendants-Appellees.
 No. 80-4556.
 United States Court of Appeals,
Ninth Circuit.
 Argued Feb. 11, 1982.
Submitted Feb. 18, 1982.
Decided March 15, 1982.
 
 Kelley Ann Burg, San Rafael, Cal., for plaintiff-appellant.
 Joanne Condos, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before FARRIS, FERGUSON and NELSON, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 Muntin, an experienced deckhand, was the first woman ever to apply for a position as deckhand at Historic Ships Park in San Francisco. She placed third out of 60 applicants on the qualifying exam. The California Department of Parks and Recreation departed from its 18-year practice of interviewing the top three competitors on the exam, and refused to interview her for deckhand vacancies. The testimony and deposition of the person responsible for hiring decisions show a clear discriminatory animus against the hiring of women as deckhands. In this resulting Title VII action, the trial court held that the employer's actions "were not based on any intent or design to discriminate against plaintiff because of her sex." We reverse.
 
 I. Intent to Discriminate
 Title VII provides in pertinent part that:
 
 2
 (a) It shall be an unlawful employment practice for an employer ... (2) to limit, segregate, or classify ... applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's ... sex ....
 
 
 3
 42 U.S.C. § 2000e-2. As explained by the Supreme Court in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981), the burden of proof is on the plaintiff to prove discrimination in an action brought under this section. In the typical case, the plaintiff begins by making out a prima facie case of discrimination. To do so, she must simply establish, by a preponderance of the evidence, "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, supra, at 253, 101 S.Ct. at 1093. By doing this, the plaintiff raises a rebuttable presumption of discrimination, and unless the defendant comes forward with evidence "legally sufficient to justify a judgment," in its favor, id. at 255, 101 S.Ct. at 1094, the plaintiff has met her burden of proof and is entitled to judgment in her favor. Id. at 254, 101 S.Ct. at 1094. If the defendant meets its burden of production by coming forward with an explanation of its action, the presumption "drops from the case," id. at 255 n.10, 101 S.Ct. at 1095 n.10, and the plaintiff must carry her ultimate burden of proof without its benefit. She is free to introduce additional evidence to establish that the explanation offered by the employer is a mere pretext. Id. at 255-56, 101 S.Ct. at 1094-95. Thus, the typical case will pass through three stages of proof before the plaintiff can prevail: the prima facie case giving rise to a presumption of discrimination, the employer's rebuttal of that presumption by the offering of a legally sufficient explanation, and the plaintiff's demonstration that the explanation is mere pretext.
 
 
 4
 Not every successful case will conform to this pattern, however. The employer may decline to offer evidence to rebut the presumption arising from the prima facie case. Or, the evidence used by the plaintiff in the first place to establish her prima facie case may suffice to convince the trier of fact that the explanation offered by the employer is pretextual. As the Supreme Court noted,
 
 
 5
 A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
 
 
 6
 Id. at 255 n.10, 101 S.Ct. at 1095 n.10. Indeed, the evidence used to establish the prima facie case may be so conclusive as to establish, as a matter of law, the fact of discriminatory intent. In such a case the defendant will be unable to meet its burden of coming forward with a legally sufficient explanation.
 
 
 7
 In the present case, the hiring officer's trial and deposition testimony included the following:
 
 
 8
 Q. Do you think women should be standing night watch in San Francisco?
 
 
 9
 A. No.
 
 
 10
 R.T. 115.
 
 
 11
 Q. Do you think the appointment of women deckhands at the park would cause problems?
 
 
 12
 A. Not particularly other than a-particularly the night watch business, that sort of thing.
 
 
 13
 Q. But that's a problem that you see, a woman standing-
 
 
 14
 A. I see it as a very serious problem, yes.
 
 
 15
 Q. That women shouldn't be standing night watch in San Francisco?
 
 
 16
 A. Right.
 
 
 17
 Q. So, it would be practically impossible, then, for you to give consideration to a woman for a deckhand position; is that correct?
 
 
 18
 A. Well, it would certainly be limiting.
 
 
 19
 R.T. 124.
 
 
 20
 Q. Have you ever worked with women deckhands?
 
 
 21
 A. At sea?
 
 
 22
 Q. Yes.
 
 
 23
 A. No.
 
 
 24
 Q. Would you want to?
 
 
 25
 A. No.
 
 
 26
 Q. Why not?
 
 
 27
 A. It's a lot of problems. I'm talking about merchant ships, now, with women in the ship.
 
 
 28
 Q. What kind of problems?
 
 
 29
 A. Sexual problems.
 
 
 30
 Q. Such as?
 
 
 31
 A. Fights.
 
 
 32
 Q. What kinds of other problems do you foresee?
 
 
 33
 A. Other kinds of problems? Mostly those between the two sexes. As far as abilities go, I'm sure they're every bit as capable as most of the guys going to sea today. But off watch, trouble.
 
 
 34
 R.T. 194-95. We are of the opinion that this testimony, as a matter of law, demonstrates a discriminatory animus-a disposition not to hire women as deckhands regardless of their ability to perform the job. Together with the Department's departure from its long-standing practice of interviewing the top three applicants for deckhand jobs, we think that this testimony not only permits, but compels, an inference that the Department classified applicants "in a way which would deprive or tend to deprive" Muntin of employment opportunities because of her sex. That being so, there is no need, for the purpose of deciding whether a Title VII violation has occurred, to consider the explanations which the employer might be able to claim for its refusal to interview or hire Muntin as a deckhand. No such explanation could be sufficient, as a matter of law, to justify a judgment that unlawful discrimination did not occur.
 
 II. Remedy
 
 35
 Under Title VII, the question of appropriate remedy is distinct from the question whether there was intentional discrimination. For instance, the law does not contemplate an award of backpay to a plaintiff who, though qualified, would not have been hired or promoted even in the absence of the proven discrimination. Thus, the Department's explanations for not interviewing or hiring Muntin are relevant on the issue of appropriate remedy, even though they cannot rebut the proof of discrimination. However, in this context we cannot rely on the trial court's judgment that the employer's explanations were sufficient. The trial court may have improperly allocated the burden of proof to the plaintiff. On the issue of an appropriate remedy, that burden rests with the defendant. If the defendant meets that burden, establishing by clear and convincing evidence that the plaintiff would not have been hired even absent the illegal discrimination, then retroactive appointment or promotion, and back pay, would not be among the available remedies.
 
 
 36
 Thus, in League of United Latin American Citizens v. City of Salinas Fire Dep't, 654 F.2d 557 (9th Cir. 1981), we observed that:
 
 
 37
 Once intentional discrimination in a particular employment decision is shown, ... the disadvantaged applicant should be awarded the position retroactively unless the defendant shows "by 'clear and convincing evidence' that even in the absence of discrimination the rejected applicant would not have been selected for the open position." ... Where, as here, the plaintiff has proved intentional discrimination, Burdine no longer applies. The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly.
 
 
 38
 Id. at 558-59 (citations omitted). On remand, the trial court will therefore have to determine whether the Department's asserted explanations for not hiring Muntin provide "clear and convincing evidence" that she would not have been hired even in the absence of the proven discrimination.
 
 
 39
 The judgment appealed from is REVERSED, and the cause is REMANDED for proceedings not inconsistent with this opinion.