Joanne Beaule **RUGGLES,**
*Plaintiff-Appellee,*

v.

**CALIFORNIA POLYTECHNIC STATE UNIVERSITY, San Luis Obispo,**
*Defendant-Appellant.*

**Civ. A. No. 84–6223.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Aug. 19, 1986.

As Amended on Denial of Rehearing
Oct. 28, 1986.

Henry M. Willis, Los Angeles, Cal., for plaintiff-appellee.

Richard M. Radosh, Los Angeles, Cal., for defendant-appellant.

Before ANDERSON, FARRIS, and NELSON, Circuit Judges.

FARRIS, Circuit Judge:

Joanne Beaule Ruggles brought this Title VII action against her former employer California Polytechnic State University. She prevailed at trial on her claim that, after she filed an EEOC complaint against Cal Poly, the university retaliated against her by eliminating a tenure-track teaching position for which she was applying. The district court awarded her $107,596 in back pay, $126,073.75 in attorney's fees, $12,958.18 in expenses, and instatement in a tenure-track position within the Art De-

partment at Cal Poly. Her court-ordered appointment included retroactive seniority for purposes of compensation but not for tenure. We affirm the district court's findings that Ruggles established a *prima facie* case of retaliation and that the nonretaliatory reasons which Cal Poly articulated were pretextual; we reverse, however, the judgment of liability and the award of injunctive relief and damages, and remand for a new trial on the issues of damages liability and remedy.

## I. FACTS

From 1973 to 1979 Ruggles worked as a part-time instructor in the Art and Architecture Departments of Cal Poly. In 1979 Cal Poly advertised for a lecturer in Basic Design and Drawing, a course offered by the Art Department. Ruggles applied. She was not selected. In July of 1979 she filed a complaint with the Department of Labor, followed by charges with the EEOC in March of 1980.

In the winter of 1980 the Art Department issued advertisements for tenure-track positions in Basic Design and Drawing and in Graphic Design. There was testimony that the original intent of the Department was to hire one Basic Design and Drawing candidate and two Graphic Design candidates. Ruggles, along with sixteen others, applied for this 1980 tenure-track position in Basic Design and Drawing. A few days after the period for submitting applications closed, Wally Peets, the man who had accepted and was serving in the 1979 Basic Design and Drawing lectureship, told the head of the Art Department that he was withdrawing his candidacy from the 1980 tenure-track pool of applicants.

Approximately one month later, in mid-June of 1980, the tenured faculty of the Art Department decided, after its review of both the Basic Design and Drawing and Graphic Design candidates, to eliminate the Basic Design and Drawing position and to hire three Graphic Designers, rather than the original two. The decision to hire three rather than two Graphic Designers was not made until after the decision had been made to eliminate the position in Basic Design and Drawing.

Ruggles brought three groups of claims before the district court. She claimed 1) sex discrimination based on Cal Poly's failure to hire her for the 1979 Basic Design and Drawing position, 2) retaliation based on Cal Poly's failure to hire her as a part-time instructor in the Architecture Department during the 1979–80 winter quarter, and 3) discrimination and retaliation based on Cal Poly's failure to hire her for the 1980 tenure-track position in Basic Design and Drawing. At Pretrial Conference she dropped a disparate impact claim of discrimination against the Art Department.

Ruggles prevailed only on the claim for retaliation based on Cal Poly's failure to hire her for the 1980 tenure-track position. Her award includes back pay, fees and expenses, and instatement in a tenure-track position in the Art Department at Cal Poly. We note jurisdiction under 42 U.S.C. § 2000e–5(j) and 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

Rule 52(a) of the Fed.R.Civ.P. indicates that the appropriate standard of review in this case is the "clearly erroneous" standard. Rule 52(a) was amended effective August 1, 1985 to strengthen that standard by including within its explicit scope documentary evidence as well as determinations of credibility. The Supreme Court has underscored the importance of appellate courts' restricting their review to the clearly erroneous standard rather than duplicating the efforts of the trial court. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985).

### B. The Prima Facie Case in Retaliation Claims

An employer violates Title VII of the Civil Rights Act when he discriminates against any employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. The burdens of persuasion and proof are the same as those in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36

L.Ed.2d 668 (1973). *See U.S. Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 713–17, 103 S.Ct. 1478, 1480–83, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

The elements of a prima facie case for retaliation are set out in *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1354 (9th Cir.1984). The plaintiff must show 1) that she was engaging in a protected activity, 2) that she suffered an adverse employment decision, and 3) that there was a causal link between the protected activity and the adverse employment decision. In this circuit, retaliation claims have arisen most often in the context of an employee's termination, and the causation element in those cases requires the plaintiff to show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and that but for such activity the plaintiff would not have been fired." *Kauffman v. Sidereal Corp.,* 695 F.2d 343, 345 (9th Cir.1982).

The case before us is one of first impression, whose difficulties lie in its hybrid nature as part retaliation and part discrimination. The statute does not differentiate explicitly between retaliation claims and discrimination claims. Section 2000e–3(a) in fact refers to retaliatory employment actions as "Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings." Yet the courts have construed the two claims differently, establishing different elements for the prima facie cases and different allocations of the burden of proof as to certain issues.

For example, in contrast to the three elements of the prima facie retaliation case, the prima facie discrimination case has four elements. A plaintiff must show that 1) she belongs to a protected group, 2) she applied for and was qualified for a job for which the employer was seeking applicants, 3) despite her qualifications she was rejected, and 4) after her rejection the employer continued to seek applicants with her qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817,

1824, 36 L.Ed.2d 668 (1973). This four-part test is not rigid or exclusive and may be adapted to the facts of the particular case. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 575–76, 98 S.Ct. 2943, 2948–49, 57 L.Ed.2d 957 (1978); *Hagans v. Clark,* 752 F.2d 477, 481 (9th Cir.1985).

The case before us is a claim for retaliation, yet it arises from Cal Poly's failure to hire Ruggles, a factual setting that usually produces discrimination claims. Seldom does an applicant for a job have a pre-existing employment relationship such that the failure to hire is retaliatory rather than discriminatory. This appears to be the first such case, and because of this unusual setting both the district court and the parties understandably betray some confusion over the elements of the prima facie case and the burden of proof.

Despite this claim's setting, more like discrimination (failure-to-hire) than retaliation (usually a termination), the prima facie elements of a retaliation claim are still applicable. We see no reason to confuse this case by importing the prima facie elements from the discrimination context and applying them to a claim for retaliation.

Specifying that the elements of a retaliation case apply here, however, is only the beginning of our analysis, for the prima facie elements in retaliation cases had their genesis in termination cases and do not translate literally in the failure-to-hire context. The first requirement, that the plaintiff engage in a "protected activity", raises no problems in either context. The second requirement, that of an "adverse employment decision," is more problematic. In the typical termination case, the "adverse employment decision" is the termination itself. In a failure-to-hire case, on the other hand, there is no termination; there is only the failure to hire. The confusion arises over what a plaintiff in a failure-to-hire case must show to satisfy the requirement of an "adverse employment decision." We see two possible interpretations.

The strictest showing would require the plaintiff to prove that she would have obtained the job. This element, combined

with the third prima facie element, that of causation, would require proof that but for her protected activities she would have been hired.

The other, less stringent possibility would be to interpret the "adverse employment decision" as the plaintiff's rejection, whether through the closing of the position or the hiring of someone else. According to this view, a plaintiff would satisfy her prima facie case by showing that but for her protected activities the position would not have been eliminated or someone else would not have been hired. The difference between the two standards is that the first requires a plaintiff to show as part of her prima facie case that she would have obtained the job. The second requires a plaintiff to show only that she did not get the job because of her protected activities.

■ We hold that the second standard is more appropriate than the first for retaliation claims arising in the failure-to-hire context. This standard requires a plaintiff to show that the position for which she applied was eliminated or not available to her because of her protected activities. Her "adverse employment decision" is the closing of the job opening to her and the loss of opportunity even to compete for the position. The plaintiff need not show that she would have obtained the job, a showing that would be nearly insurmountable at the prima facie stage and involves factors better marshalled and presented by the defendants. Accordingly, we hold that in the failure-to-hire context involving a claim of retaliation, the plaintiff meets her prima facie burden by showing that 1) she engaged in protected activities, 2) the position was eliminated as to her, and 3) the position was eliminated as to her because of the protected activities.

■ At this point, consistent with the *McDonnell Douglas* analysis, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the "adverse employment decision." If the defendant is successful, the plaintiff must then prove by a preponderance of the evidence that the proffered reasons are pretexts for retaliation or that a discriminatory reason more likely motivated the employer's action. *Wrighten*, 726 F.2d at 1354. *See U.S. Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 714–5, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

If the plaintiff succeeds at this point, a presumption is created that the adverse employment decision was the product of retaliatory intent. The defendant may rebut this presumption by showing by a preponderance of the evidence that the adverse action would have been taken even in the absence of discriminatory or retaliatory intent. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Wrighten*, 726 F.2d at 1354; *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983).

■ This final stage in the allocation of proof allows a defendant to show that the plaintiff would not have been hired, or would have been fired, regardless of the retaliatory motives of the employer. This is essentially a question of causation, the courts having recognized that a plaintiff garners a windfall if she receives the panoply of Title VII compensatory remedies without proof that she would have obtained the job. Engaging in protected activities or protected conduct should not put the plaintiff in a better position than she would be in otherwise. *Mt. Healthy City Board of Education*, 429 U.S. at 285–87, 97 S.Ct. at 575–76. This rule of causation has been applied to employment decisions involving First Amendment claims of protection, *id.*, as well as to discrimination claims under Title VII, *Muntin v. State of California Parks and Recreation Department*, 738 F.2d 1054, 1055–56 (9th Cir.1984); *League of United Latin American Citizens v. City of Salinas*, 654 F.2d 557, 558–59 (9th

Cir.1981).[1] It applies equally to retaliation claims under Title VII, *Wrighten*, 726 F.2d at 1354.

What we have just set out is a traditional exposition of the elements and allocation of burdens in a retaliation case; we have adjusted only the prima facie element of an "adverse employment decision" to fit the circumstances of a retaliation claim in the failure-to-hire context.

C. Proceedings in the District Court.

Turning to the facts of this appeal, we note the confusion both in the district court and in the briefs and argument on appeal concerning the prima facie case and burdens of proof. The district judge and Ruggles both apparently deemed it Ruggles' burden to show as part of her prima facie case that she would have obtained the 1980 Basic Design and Drawing position. *See* Conclusions of Law ¶ 7. Cal Poly reasserts this on appeal, claiming that the district court's finding for Ruggles on this issue was clearly erroneous. Ruggles on appeal seems to ignore the posture of the issue in the district court and, relying on discrimination rather than retaliation cases, argues that the burden falls on Cal Poly to show that she would not have obtained the position.

■ Applying our exposition of the law set out in this opinion, we conclude that Ruggles' prima facie case required a showing that but for her filing of the EEOC complaint the 1980 position would not have been closed. The district judge found that Ruggles satisfied this showing, and there is ample evidence in the record to support the district judge's findings. Cal Poly proffered reasons for its action, and the district judge found that these reasons were pretextual. There is ample support in the record for this finding as well.

■ The district judge, however, believing that Ruggles was required to prove that she would have obtained the position, found that Ruggles showed that she would have been hired had the position not been eliminated. For this finding there is no direct support in the record, and we hold it to be clearly erroneous.

Sixteen candidates along with Ruggles applied for the 1980 Basic Design and Drawing position. The qualifications of the seventeen applicants were never compared, and we cannot reconcile a finding that Ruggles would have obtained the job with the fact that her qualifications were never compared with those of the other candidates, especially when there was no independent testimony from someone in the Department that Ruggles was the top choice. In fact, the list of seventeen candidates included Walton Fosque, who had been the Department's first choice for the 1979 position before he withdrew his candidacy. Thus, not only is there no evidence that Ruggles would have gotten the 1980 job, there is evidence that at least one other candidate was superior to Ruggles in the view of the Department.[2]

III. CONCLUSION

Because of the confusion as to the burdens of proof, we remand this case to the district court. We find support in the record that Ruggles carried the burden on

---

1. The discrimination cases apply a "clear and convincing evidence" standard for the defendants' burden at this stage. *Muntin*, 738 F.2d at 1056; *League of United Latin American Citizens*, 654 F.2d at 558. In light of the *Mt. Healthy* case and *Wrighten*, both of which specify a "preponderance of the evidence" standard, we think the latter controls in the instant case.

2. We are puzzled by the contradiction in Judge Nelson's conclusions. She would let stand the district court's factual finding that Ruggles would have obtained the job, yet she would remand to allow Cal Poly to prove that Ruggles would not have obtained the job. If Judge Nelson would let stand the factual finding that Ruggles would have obtained the job, how can Cal Poly even attempt to prove the opposite? A fact found by the district court, and left untouched by the circuit court, is established, and Cal Poly could not on remand attempt to rebut such an established factual finding. We point this out merely to reveal the flaw in the concurrence, not to imply that we are reversing this factual finding only to facilitate a remand.

Furthermore, the fact that Cal Poly closed the position with some quantum of retaliatory motive does not mean that Ruggles would have obtained the position. The retaliatory closing meant that Ruggles would certainly *not* get the job, but it did not establish the converse.

her prima facie case and we affirm to that extent. We reverse as clearly erroneous the finding that Ruggles would have obtained the position. On the remaining issues of liability, the university bears the burden of proving by a preponderance of the evidence that Ruggles would not have been hired even in the absence of retaliatory intent. Because the parties and the judge apparently assigned this burden to Ruggles at trial, and because the law on this issue was unclear, we remand to the district court to allow Cal Poly an opportunity to show that Ruggles would not have been hired. Our opinion in *Muntin*, 738 F.2d at 1055–56, establishes a two-step procedure which may be helpful to the district court. The district court's award to Ruggles of instatement in a tenure-track position with back pay, attorney's fees, and litigation expenses is reversed.

### AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

NELSON, Circuit Judge, concurring in the judgment:

I agree with the court's result and much of its analysis. I write separately to clarify what I believe to be the proper allocation and order of proof, and to point out that we need not decide whether there was ade-

quate support in the record for the district court's finding that Ruggles would have received the 1980 Basic Design and Drawing position but for her protected activity.

In order to make out a prima facie case of retaliation,[1] the plaintiff must demonstrate a causal link between her protected activity and the adverse employment decision. My colleagues suggest that the requisite causal link can be established only by a showing that the plaintiff would not have suffered the adverse decision *but for* her protected activity. *See ante*, at 784–785. I disagree. My understanding of *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346 (9th Cir.1984), is that once the plaintiff succeeds in showing that her protected activity was the likely reason for the adverse employment decision, *see Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982) (cited in *Wrighten*, 726 F.2d at 1354),[2] and that the employer's proffered explanation for the adverse decision was a pretext, "a presumption is created that the adverse employment [decision] was the product of discriminatory intent." *Wrighten*, 726 F.2d at 1354. At that point, the burden of persuasion shifts to the defendant-employer to show that "the adverse [decision] would have been taken even in the absence of discriminatory intent." *Id.* (citing *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983)).[3] That is, the defendant may show that the

---

1. My colleagues' assertion that retaliation is somehow distinct from discrimination, *see ante*, at 785, may cause some confusion. Retaliation is simply one sort of discrimination—discrimination on the basis of activity protected under section 704(a) of Title VII. I think the distinction my colleagues have in mind is the distinction between discrimination on the basis of protected characteristics (such as race, sex, and national origin), and discrimination on the basis of section 704(a) protected activity (i.e., retaliation).

2. That her protected activity was the likely reason for the adverse decision does not necessarily mean that *but for* such activity she would not have suffered the adverse decision. Indeed, even if the sole motivation for the employer's decision was the plaintiff's protected activity, it is still possible that the same decision would have been made on the basis of her *non*-protected activity. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287,

97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (once plaintiff carried burden of showing that defendant's decision not to rehire him was motivated by his protected conduct, district court should have gone on to determine whether defendant would have reached same decision in absence of protected conduct).

3. I am puzzled by my colleagues' similar assertion that "the defendant may rebut th[e] presumption [of discriminatory intent] by showing ... that the adverse action would have been taken even in the absence of discriminatory ... intent." *Ante*, at 786. If, as my colleagues contend, the plaintiff must prove "but for" causation in order to make out her prima facie case, then the defendant's opportunity for rebuttal is only illusory. Once the plaintiff had conclusively proven that she would have been hired, how could the defendant conclusively prove that the plaintiff would not have been hired?

plaintiff's protected activity was *not* a "but for" cause of the adverse decision.[4]

As *Muntin v. State of California Parks and Recreation Department,* 671 F.2d 360 (9th Cir.1982) (*Muntin I*), conclusively demonstrates, a rejected job applicant can prove intentional discrimination under Title VII without a showing that she would have received the job for which she applied. She need only prove that she was effectively eliminated from consideration because of her protected characteristic or activity. *See id.* at 362–63 (defendant employer unlawfully discriminated on the basis of sex by classifying applicants in such a manner as to deprive plaintiff of opportunity to compete for employment). Thus, Ruggles could make out her prima facie case by showing that she was eliminated from consideration because of her protected activity.[5]

My colleagues and I agree that the district court erred in allocating to Ruggles the burden of showing that, but for her protected activity, she would have received the 1980 Basic Design and Drawing position over the sixteen other applicants. We also agree that the appropriate course is to give Cal Poly an opportunity to put before the district court "clear and convincing evidence," *see League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557, 558 (9th Cir.1981), that Ruggles would not have been hired even in the absence of the proven discrimination. For in allocating to Ruggles the burden of showing she would have received the position, the district court might have lulled Cal Poly into believing that it did not have to put forth any evidence on its own behalf. Yet instead of simply remanding so that Cal Poly might have an opportunity to make its evidentiary presentation, my colleagues decide to reach the issue of whether the record supports the district court's finding that Ruggles would have been hired had she not engaged in protected activity. Because the resolution of that issue is wholly unnecessary to our disposition, I cannot subscribe to that decision.[6]

---

4. I read our opinion in *Kauffman v. Sidereal Corp.,* 695 F.2d 343, 345 (9th Cir.1982) ("[I]t must be established by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and that *but for such activity the plaintiff would not have been fired.*") (emphasis added), to be consistent with this formulation of the retaliation case. *Wrighten* cites *Kauffman* with approval, all the while suggesting that it is the *defendant's* burden to *dis* prove "but for" causation once the plaintiff has succeeded in establishing that the adverse decision "was the product of discriminatory intent." 726 F.2d at 1354.

5. It so happens that Ruggles was eliminated from consideration by virtue of Cal Poly's decision to close the position for which she applied. Thus, Ruggles could make out her prima facie case by showing that the position was closed because of her protected activity. *See ante,* at 786. Of course (and my colleagues seem to suggest otherwise), not all retaliation in the failure-to-hire context is accomplished through a closing of the position for which the plaintiff applied. The employer simply might choose another applicant for the same position. Accordingly, my colleagues' articulation of the plaintiff's prima facie requirements should not be read to apply to all retaliation cases in the failure-to-hire context.

6. I note also my disagreement with the court's conclusion that the record provides no support

for the finding that Ruggles would have been hired had she not engaged in protected activity. As my colleagues readily acknowledge, Ruggles was able to show that Cal Poly closed the 1980 Basic Design and Drawing position in order to retaliate against her. *See ante,* at 787 (Ruggles made requisite "showing that but for her filing of the EEOC complaint the 1980 position would not have been closed"). Ruggles was also able to show, through the testimony of Cal Poly's own witnesses, that Cal Poly closed the position only *after* it had reviewed the qualifications of all seventeen applicants. *See* R.T. 317 (testimony of T. Johnston) (noting that chairman of department and tenured faculty had completed their "reviews" of applications before they decided to close the position); R.T. 450 (testimony of C. Jennings) ("We made no decisions [concerning the position] until we had [completed our approximately two-week] review [of] all the candidates' applications."). Thus, I think a finder of fact could reasonably infer that Cal Poly closed the position because Ruggles otherwise would have received it. That Walton Fosque was Cal Poly's first choice for the job two years earlier is irrelevant, and the court's reliance upon that fact, *see ante,* at 11, is misplaced. The proper inquiry is whether Ruggles was the most qualified applicant at the time the school eliminated the job in order to retaliate against her.

While perhaps the district court would be prudent to compare Ruggles's qualifications

with those of the other candidates, *see ante,* at 787, the particular circumstances of this case do not mandate such a comparison. In my view, the only reversible error committed by the district court was its improper assignment of proof burdens. Because that error may have resulted in an incomplete factual record, I can-

not affirm the district court's finding that Ruggles would have been hired. *See ante,* at 787, n. 2. However, I cannot agree with my colleagues' conclusion that the factual record, as it has thus far been developed, provides no basis for the finding.