**Judith A. WHETZEL, Plaintiff,**

v.

**Norman Y. MINETA, Secretary of Transportation, Defendant.**

**No. A03–267 CV JWS.**

United States District Court,
D. Alaska.

April 11, 2005.

---

---

## ORDER FROM CHAMBERS

### [Re: Motion at Docket 13]

SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 13, defendant Norman Y. Mineta ("Mineta") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Judith A. Whetzel ("Whetzel") opposes the motion at docket 15. Oral argument was not requested and would not assist the court.

### II. BACKGROUND

This dispute arises from plaintiff's employment with the Federal Aviation Administration ("FAA") from 1978 through March 2, 2000.[1] Plaintiff and the FAA

---

1. Docket 1 at ¶ 6; doc. 2 at ¶ 6.

entered into a mediation agreement on May 20, 1999, that provided that within ninety days of the date of the agreement, the FAA would review plaintiff's assignments in relation to her position and take "appropriate action,"[2] and further stipulated that plaintiff would begin "cross training the first pay period beginning in October, 1999."[3] Plaintiff asserts that the agreed-upon review did not occur,[4] and additionally claims that she did not receive the agreed-upon "cross-training."[5] Plaintiff alleges that she was scheduled to be upgraded to the FG–13 level as a Civilian Aviation Security Inspector on or about August 15, 1999.[6] Plaintiff alleges that the FAA denied her training that would enable her advancement with the FAA, while at the same time providing training to "men, younger women and persons without disabilities."[7] Plaintiff alleges that the FAA imposed terms and conditions relating to her eligibility for promotion to FG–13 "that were more harsh and unobtainable than [those] placed on persons who were men, younger women and those without disabilities."[8]

Plaintiff asserts that the above-referenced acts constitute discrimination on the basis of her age, sex, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*[9] Additionally, plaintiff asserts that the above-referenced acts were undertaken in reprisal of her complaints with the Occupational and Health Administration ("OSHA"), and her complaints regarding allegedly discriminatory personnel practices at the FAA.[10]

Jurisdiction arises under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–16(c).

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[11] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[12] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[13] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[14] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[15]

2. Doc. 1 at ¶ 7; doc. 2 at ¶ 7.

3. Doc. 1 at ¶ 9; doc. 2 at ¶ 9.

4. Doc. 1 at ¶ 8.

5. *Id.* at ¶ 10.

6. *Id.* at ¶ 11.

7. *Id.* at ¶ 14.

8. *Id.* at ¶ 12.

9. *Id.* at ¶ 15.

10. *Id.*

11. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

12. *Id.* at 323–25, 106 S.Ct. 2548.

13. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

14. *Id.* at 255, 106 S.Ct. 2505.

15. *Id.* at 248–49, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. Plaintiff's Claims under the Rehabilitation Act

■■■ Defendant asserts that plaintiff has failed to make a *prima facie* showing of disability discrimination under the Rehabilitation Act. In order to qualify for protection under the Rehabilitation Act, plaintiff must be disabled as defined by the Act. The court applies the same standard in determining disability under the Rehabilitation Act as utilized in determining disability under the Americans with Disabilities Act ("ADA").[16] To be disabled within the meaning of the ADA, plaintiff must be afflicted by a physical or mental impairment that substantially limits one or more major life activities, and that she either has a record of such impairment or is regarded as having such an impairment.[17] "Major life activities" include activities central to daily life such as walking, seeing, hearing, and performing manual tasks.[18] Additionally, the limitation of plaintiff's major life activities must be "substantial," meaning that plaintiff is "[u]nable to perform a major life activity that the average person in the general population can perform," or that she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[19]

■■■ Defendant does not appear to contest that plaintiff suffers from melanoma and hyperthyroidism. Thus, the court's analysis turns to whether these medical afflictions substantially limit plaintiff's ability to perform one or more major life activities. Plaintiff asserts that she is unable to open the FAA safe, is unable to drive a vehicle, requires assistance transporting work items, and suffers from "a serious loss of energy."[20] As noted by defendant, when asked about her life activity limitations, plaintiff responded only that she had to "be very careful" with sharp objects due to an inability to fight infections in her left arm.[21] Plaintiff stated that she is capable of picking up objects from the floor and placing them on a table, can carry documents to and from various sites, and has no difficulty navigating stairs.[22] Plaintiff makes no claim that she is unable to perform household chores or tend to her personal hygiene, and her inability to perform those manual tasks unique to her job, such as opening the FAA safe, do not qualify as "an important part of most people's daily lives."[23] In sum, plaintiff has failed to establish that she was unable to perform activities central to daily life such as walking, seeing, hearing, and performing manual tasks, and has failed to demonstrate that she was restricted as to the condition, manner, or duration under which she could perform those life activities. For these reasons, plaintiff has failed to make a *prima facie*

---

**16.** *Coons v. Sec. of U.S. Dep't. of the Treasury,* 383 F.3d 879, 884 (9th Cir.2004).

**17.** 29 C.F.R. § 1630.2(g)(1–3); *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

**18.** *Toyota Motor,* 534 U.S. at 195, 122 S.Ct. 681.

**19.** *Id.* at 195–6, 122 S.Ct. 681, (*quoting* 29 C.F.R. § 1630.2(j) (2001)).

**20.** Doc. 15 at 7. The court notes that plaintiff's citation in support of these assertions addresses only her claim that she suffers from a lack of energy.

**21.** Doc. 13, ex. H at 86.

**22.** *Id.* at 87–8.

**23.** See *Toyota Motor,* 122 S.Ct. at 693.

showing of disability under either the ADA or the Rehabilitation Act.

## B.  Plaintiff's Claims of Discrimination

To establish a *prima facie* showing of discrimination under Title VII, plaintiff must show that she (1) belongs to a protected class;  (2) was qualified for the position;  (3) was subjected to adverse employment action;  and (4) similarly situated individuals outside of her protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination.[24]  The burden then shifts to the employer to present legitimate, nondiscriminatory reason for adverse action.[25]  Upon such showing, the burden returns to plaintiff who must demonstrate that the articulated reason is a pretext for discrimination.[26]

### 1.  Plaintiff's Claims with Respect to Age

Defendant concedes that as an individual over the age of forty, plaintiff belongs to a class of persons protected under Title VII, and appears to concede that plaintiff suffered an adverse employment act, but contests that plaintiff was qualified for the position sought, and that similarly situated individuals were treated more favorably.[27]

■ With regard to plaintiff's qualifications for a FG–13 upgrade, plaintiff states in her response that Civil Aviation Safety Field Officer Supervisor Edwin Doody testified he would have recommended plaintiff for a FG–13 upgrade because "[s]he had her twelve months in at the GS–12 level and in my mind she was one of those employees that were in line for a [GS–13] upgrade."[28]  Doody additionally testified that "if you were a—GS–12 journey level Special Agent for a year then you—then you were entitled to this GS–13 level upgrade."[29]  It is not clear from the testimony whether Doody's references to a "GS–13" upgrade are the same as the FG–13 upgrade sought by plaintiff, and the response makes no effort at clarifying the discrepancy, but presumably they refer to the same upgrade.  In light of the testimony of Doody, plaintiff has made a *prima facie* showing that she was qualified for the desired upgrade to GS–13.

With respect to whether similarly situated employees outside plaintiff's protected class received more favorable treatment, plaintiff asserts that plaintiff's supervisor, Dennis Fiorucci, made available the opportunity to qualify for an FG–13 upgrade to Paul Cash, whom plaintiff contends was similarly qualified.  Additionally, plaintiff asserts that Fiorucci made specific train-

---

**24.**  *Peterson v. Hewlett–Packard Co.,* 358 F.3d 599, 603 (9th Cir.2004).

**25.**  *Leong v. Potter,* 347 F.3d 1117, 1124 (9th Cir.2003) citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**26.**  *Leong,* 347 F.3d at 1124, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**27.**  Doc. 13 at 24–7.

**28.**  Because plaintiff failed to identify the above-referenced document in any meaningful way, the court is unsure of this document's origins or pedigree.  Presumably, the docu-

ment attached to docket 15 and marked as page 204 is testimony from Supervisor Doody.  However, two pages earlier, at the page marked 132, appears the testimony of Paul Cash. Nothing separates the two documents, or identifies them, forcing the court to literally scan each document for any hint of who the testifying witness might be.  Compounding this problem is the fact that plaintiff failed even to accurately cite this document in her response, which she identifies as appearing at "pp. 293–204," which again forces the court to second-guess plaintiff's citations.

**29.**  Doc. 15, exhibit marked as pages 203–204.

ing in "airside enforcement and compliance" available to Cash that was not made available to plaintiff. Plaintiff notes that Cash, who eventually received the FG–13 promotion, is twelve years younger than plaintiff, is male, is not disabled, and concludes that his promotion evidences unlawful discrimination against her.

■ Plaintiff, however, has failed to show that Cash was similarly situated to plaintiff. Cash and plaintiff worked in different departments. Cash received the promotion based on experience he obtained working in the Dangerous Goods Section. Cash got his 52 weeks of specialized experience in the Dangerous Goods Section. Plaintiff was not in the Dangerous Goods Section. Consideration of all the evidence shows that Cash and Whetzel were not similarly situated. In sum, plaintiff has failed to make a *prima facie* showing that similarly situated employees outside her protected class were treated more favorably.

## C. Plaintiff's Claims of Retaliation

■ To make a prima facie showing of retaliation under Title VII, the claimant must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.[30] In the Ninth Circuit, only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations constitute actionable retaliation.[31] Among the employment decisions that can constitute an adverse employment action in the Ninth Circuit are termination, dissemination of an undeserved negative performance review, and refusal to consider for promotion.[32] Once the plaintiff establishes a *prima facie* showing of retaliation under Title VII, the burden shifts to the employer to state a legitimate explanation for the adverse action.[33] If such explanation is provided by the employer, the burden then shifts to the plaintiff to demonstrate that the proffered reason is pretextual.[34]

Defendant concedes that plaintiff's participation in mediation constitutes a protected activity, but contends that her participation in that mediation did not result in an adverse employment action.[35] Indeed, defendant asserts that the mediation resulted in victory for plaintiff, who was provided an "opportunity to be detailed to airside."[36] Defendant also insists that plaintiff has failed to demonstrate the existence of a hostile work environment.[37] Additionally, defendant asserts that even if the FAA's failure to promote plaintiff qualifies as an adverse employment action, "there is no causal link between her participation in the EEO mediation and the failure to be upgraded."[38] Thus, defendant

---

**30.** *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000), citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir.1997).

**31.** *Id.* at 928, citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000).

**32.** *Brooks v. City of San Mateo*, 229 F.3d at 929, citing *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir.1996); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir.1997); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987); *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir.1986).

**33.** *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir.1996).

**34.** *Id.*

**35.** Doc. 13 at 39.

**36.** *Id.*

**37.** *Id.* at 39–40.

**38.** *Id.* at 40.

concludes that "there is simply no evidence that the manner the FAA treated Ms. Whetzel would likely deter employees from engaging in protected activity." [39]

■ As noted in defendant's reply, plaintiff's response simply fails to address defendant's contentions regarding plaintiff's claim that she was retaliated against or subjected to a hostile work environment. By failing to refute defendant's assertions, plaintiff has conceded these points. There are no issues of disputed material facts regarding plaintiff's retaliation claims. Defendant is entitled to judgment as a matter of law on these claims.

### V. CONCLUSION

For the reasons articulated above, the motion at docket 13 is **GRANTED**. The Clerk will please enter judgment that plaintiff take nothing from defendant.