# United States Court of Appeals
## For the First Circuit

No.05-2721

GLADEN VELEZ,

Plaintiff, Appellant,

v.

JANSSEN ORTHO, LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta,  Senior U.S. District Judge]

Before

Selya, Lipez, and Howard, Circuit Judges.

Carlos M. Vergne for appellant.
Carl Schuster, with whom Mariela Rexach and Schuster & Aquiló
LLP were on brief, for appellee.

November 3, 2006

**LIPEZ**, **Circuit Judge**.  In this unusual employment discrimination case, we must decide what prima facie showing is necessary to establish an adverse employment action, within the meaning of Title VII, when a plaintiff alleges a retaliatory failure-to-hire.  Claims of retaliation in the failure-to-hire context are sufficiently rare that this question is one of first impression for this court.  When a plaintiff makes such a claim, we conclude that the establishment of an "adverse employment action" requires a showing that (1) she applied for a particular position (2) which was vacant and (3) for which she was qualified.  In addition, of course, she must show that she was not hired for that position.

Appellant Gladden Velez claims that her former employer, appellee Janssen Ortho, refused to consider her for re-employment in retaliation for a previous lawsuit she filed against the company in the Puerto Rico Court of First Instance alleging sexual harassment by her supervisor.  She brought this employment discrimination lawsuit, in the federal district court of Puerto Rico, under Title VII and Puerto Rico commonwealth statutes.  The district court granted summary judgment for Janssen on all claims, finding that Velez failed to make a prima facie showing of retaliation.  We affirm the district court's judgment, although on narrower grounds.

-2-

# I.

## A. Factual Background

We recount the facts of this case with the summary judgment standard in mind, drawing all reasonable inferences and viewing the record in favor of Velez, the non-moving party. See, e.g., Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).

Velez was first hired to work for Janssen in August 1989, and she remained at Janssen's Gurabo chemical plant until December 1998. While working at the Gurabo plant, Velez claimed that she was sexually harassed by her supervisor; she also alleged that her boss retaliated against her for reports of manufacturing irregularities she submitted to the Food and Drug Administration. In response to the alleged harassment and retaliation, Velez filed a commonwealth law claim in the Court of First Instance of Puerto Rico (the "Caguas court") on June 23, 1997. After the Caguas case was filed, Velez remained a Janssen employee and continued to perform her duties satisfactorily for over a year.

In November 1998, Velez applied for a promotion to the position of Senior Packaging Engineer. Janssen denied her request because she was not qualified for the position. Shortly thereafter, in December 1998, Janssen closed the Gurabo chemical plant and Velez lost her job; Velez received a standard severance package totaling $12,704.86. Two weeks later, Velez amended her original Caguas case to include an additional allegation of

retaliation, based on Janssen's failure to transfer her to a new position after the closing of the Gurabo plant.

In February 1999, Velez sent a letter and resume to Janssen requesting that she be considered for a Manufacturing Supervisor position. Janssen did not respond. In May 1999, Velez sent another letter and resume applying for the Senior Packaging Engineer job, for which she had been rejected prior to the closing of the Gurabo plant. Again, Janssen sent no reply to Velez.[1]

About two years later, on August 8, 2001, Velez again contacted Janssen seeking employment. She sent a general cover letter and resume to Janssen's human resources department via certified mail, requesting consideration for employment. Her letter expressed interest in "any position available." Velez mentioned a variety of general job categories (such as manufacturing supervisor, warehouse supervisor, and utilities supervisor) and asked to be considered for any position for which the human resources department considered her qualified. One week later, on August 15, Velez sent an identical letter and resume to the human resources department, this time via facsimile.

In response to Velez's August 2001 letters and resumes, Janssen's director of human resources, Carlos Otero, sent a letter stating that she would not be considered for an interview or

---

[1] Velez filed a Second Amended Complaint in the Caguas court in December 2001, alleging that Janssen was continuing to retaliate against her by failing to respond to her 1999 job applications.

"rehiring." Otero's letter mentioned Velez's prior lay-off and severance, as well as the company's "business needs" as an explanation. Otero subsequently testified that he consulted with one of Janssen's lawyers prior to finalizing and sending the rejection letter. He also testified, as did other Janssen employees, that the human resources department typically sent no response to rejected applicants.

Three days after Otero sent Velez the rejection letter, Janssen published an advertisement in the local newspaper for two Manufacturing Process Facilitator ("MPF") positions.[2] Janssen interviewed at least one candidate for one of the MPF jobs sometime in September. Janssen did not hire anyone for either position at that time. One of the positions remained vacant until July 2002, almost a year after Velez applied.[3]

---

[2] Velez has claimed that her letters and resumes were sent in response to newspaper ads. In her brief to this court and her opposition to Janssen's Motion for Summary Judgment, she alleges that Janssen advertised two MPF jobs on July 20, 2001. Velez does not support this claim with exhibits or deposition testimony. Elsewhere, she concedes that the newspaper advertisements for the two MPF positions appeared on August 19, 2001. It appears that the July 20, 2001 date is a typographical error or mistake, as the record contains no evidence that Janssen advertised these positions prior to her August 8 and August 15 letters. For purposes of this appeal, therefore, we assume that Janssen advertised two MPF positions on August 19 and not before.

[3] The record is unclear as to when the first MPF position was filled. It appears that someone was hired for that job within the year following the advertisement, but it is not clear precisely when that occurred.

## B. Procedural Background

Velez filed her complaint in this case on January 27, 2003, alleging federal claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and Title VII, 42 U.S.C. § 2000e-3. She also asserted claims under Puerto Rico's Act No. 44, P.R. Laws Ann. tit. 1, § 501 (disability discrimination); Act No. 100, P.R. Laws Ann. tit. 29, § 146 (gender-based employment discrimination); Act No. 115, P.R. Laws Ann. tit. 29, § 194a (retaliatory employment discrimination) ("Law 115"); Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-42 (general tort statute); and the privacy protections in the Puerto Rican constitution.

Janssen subsequently moved for summary judgment, arguing that Velez: (1) failed to meet her prima facie burden of showing retaliation because her prior lawsuit was not protected activity under Title VII, and (2) failed to show a causal connection between her conduct and an "adverse employment action" by Janssen.

In granting judgment for Janssen, the district court used the McDonnell Douglas burden-shifting framework for employment discrimination claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). That is, the district court found that Velez bore the initial burden of making a prima facie showing of three elements: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed

-6-

between her protected activity and the adverse employment action. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). The court also discussed the more precise standard for causation in failure-to-hire cases, as articulated in Ruggles v. Cal. Polytechnic State Univ., 797 F.2d 782, 786 (9th Cir. 1986). In Ruggles, the Ninth Circuit held that a plaintiff claiming that a failure-to-hire amounted to discriminatory retaliation must "show that the position for which she applied was eliminated or not available to her because of her protected activities." Id.

The district court first concluded that Velez's activities were not protected under Title VII. It found that Velez's "filing and successive amended filings of discrimination lawsuits against Janssen [were] unreasonable," and therefore held that Velez had not engaged in protected activity. See Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 230-31 (1st Cir. 1976) (applying a balancing test to determine whether specific actions are protected "opposition activity" and holding that an employee's actions may not be protected under Title VII where they are hostile and disruptive).

The district court alternatively held that Velez failed to satisfy the causation element of her prima facie case. It found that her allegations could not support an inference of discriminatory retaliation because she sent her letters of "application" without specifying a particular job opening and at a

time when there were no positions open to external candidates. The court therefore concluded that there was no failure-to-hire that could have been caused by Velez's prior opposition conduct.

The court also rejected Velez's claim under the Americans with Disabilities Act and the supplemental commonwealth law claims. On appeal, she challenges only the dismissal of her employment discrimination claims under Title VII and Puerto Rico law.

**II.**

Our review of the district court's summary judgment is de novo. Ingram v. Brink's, Inc., 414 F.3d 222, 228 (1st Cir. 2005); Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 30 (1st Cir. 2003). We must examine the evidence in the light most favorable to the non-moving party, and give that party "the benefit of any and all reasonable inferences." Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004). Summary judgment is an appropriate resolution of claims where "there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Calero-Cerezo, 355 F.3d at 19.

Our evaluation of Velez's claims begins with § 704(a) of Title VII, which prohibits an employer from "discriminat[ing] against any of [its] employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has . . . participated in any manner in an investigation, proceeding, or hearing under

-8-

this subchapter." 42 U.S.C. § 2000e-3(a). As already noted, claims of retaliatory discrimination under this provision must begin with a prima facie showing of three elements: (1) protected opposition activity, (2) an adverse employment action, and (3) a causal connection between the protected conduct and the adverse action. Calero-Cerezo, 355 F.3d at 25. The district court focused on the deficiencies in Velez's prima facie showing of protected opposition activities and the causal relationship between those activities and Janssen's failure to hire her. We focus on the second prong of the retaliatory discrimination test, the existence of an adverse employment action.

The district court did not explicitly address this prong. Although the court noted Velez's failure to submit her "application" in a form that complied with Janssen's typical hiring procedures, and concluded that her letters "cannot reasonably be deemed applications to be considered for [the MPF] position," it treated these deficiencies as matters of causation. The parties also discussed the specifics of Velez's August 2001 inquiries about jobs at Janssen as a causation issue. We think that this focus on causation was at best awkward on the facts of this case.

In the retaliatory failure-to-hire context, the specifics of the job application or applications that underlie a claim of failure-to-hire usually relate most naturally to the adverse employment action prong of such a claim. Put most simply, in the

absence of a job application, there cannot be a failure-to-hire. We are not suggesting that there was a complete absence of a job application in this case. But Velez only sent two general letters in August 2001 expressing interest in any available job.[4] Guided by some precedents from the other circuits, we conclude that such general letters ordinarily cannot be the predicate for the adverse employment action prong in a retaliatory failure-to-hire case. Instead, a plaintiff alleging such a claim must show that (1) she applied for a particular position (2) which was vacant and (3) for which she was qualified. In addition, she must show that she was not hired for that position.

In Morgan v. Fed. Home Loan Mort. Corp., 328 F.3d 647, 651 (D.C. Cir. 2003), the court held that the plaintiff claiming a retaliatory failure-to-hire must show "that he applied for an available job; and . . . that he was qualified for that position." The court later reiterated this formulation of the required prima facie showing in Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004). In Cichon v. Exelon Generation Co., 401 F.3d 803, 812 (7th Cir. 2005), the court applied the generally-accepted standard for retaliatory failure-to-hire claims, but also specified that plaintiffs making such claims must show that they applied for,

---

[4] In 1999, Velez sent two letters to Janssen requesting employment in specific positions. Janssen's rejection of those applications is not at issue in this case.

and had the technical qualifications for, the position sought. Id.[5] In Ruggles, the Ninth Circuit implicitly adopted the same view, holding that a plaintiff claiming retaliatory failure-to-hire must "show that the position for which she applied was eliminated or not available to her because of her protected activities." 797 F.2d at 786 (emphasis added).

Precedent in the analogous context of failure-to-promote claims also reflects the requirement that plaintiffs asserting discriminatory retaliation must show that they applied for a specific vacant position for which they were qualified, and that they did not get the job. See Brown v. Coach Stores, Inc., 163 F.3d 706, 711-12 (2d Cir. 1998) (holding that a plaintiff claiming a failure-to-promote must show that she "applied for a specific position or positions . . . rather than merely asserting that on

---

[5] In nearly all of the failure-to-hire cases we have examined, causation was the dispositive issue because the court found that the plaintiffs had applied for and been rejected for a specific job. Thus the critical issue was the motivation for that rejection. See, e.g., Arraleh v. County of Ramsey, 461 F.3d 967, 977-78 (8th Cir. 2006); Price v. Thompson, 380 F.3d 209, 212-13 (4th Cir. 2004); Walker v. Glickman, 241 F.3d 884, 889-90 (7th Cir. 2001); Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1179 (10th Cir. 2000); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1321 (10th Cir. 1999); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999); Williams v. Nashville Network, 132 F.3d 1123, 1131-33 (6th Cir. 1998); Fleming v. Boeing Co., 120 F.3d 242, 248 (11th Cir. 1997). Likewise, Carter, 387 F.3d at 878-82, Cichon, 401 F.3d at 812-15, and Ruggles, 797 F.2d at 786-88, were also decided on the causation question, as there was no dispute about the plaintiffs having applied for the sought position. Morgan is the only notable exception to this pattern. 328 F.3d at 651-54.

-11-

several occasions she or he generally requested promotion"); Petrosino v. Bell Atlantic, 385 F.3d 210, 226-27 (2d Cir. 2004) (same); Ricci v. Applebee's Ne., Inc., 297 F. Supp.2d 311, 320-22 (D. Me. 2003) (applying the Brown standard and holding that a general expression of interest in, without formal application for, a position is insufficient to support a legal claim of adverse employment action). Indeed, the Brown case provides the closest factual similarity we have found to this case. There, the plaintiff repeatedly requested a promotion, without success, but her claim for failure-to-promote was dismissed by the district court because of her inability to identify any specific positions for which she had applied. 163 F.3d at 708-09. The Second Circuit affirmed the district court's decision on the ground that a failure-to-promote claim necessitates a prima facie showing "that [the plaintiff] applied for a specific position or positions." Id. at 710. In its decision, the court explicitly articulated the concern that, absent this showing, employees could establish a claim without identifying a particular application that gave rise to the alleged adverse employment action. Id.

This specificity requirement is sensible and fair. An open-ended request for employment should not put a burden on an employer to review an applicant's generally stated credentials any time a position becomes available, at the risk of a Title VII claim. If we were to find such a general request the legal

equivalent of an application, we would require employers to answer for their failure to hire individuals who did nothing more than express a desire to be employed.  Cf. Brown, 163 F.3d at 710 (stating that general expressions of interest cannot be sufficient to state a Title VII claim because such a result would "unfairly burden" employers by requiring them "to keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they are qualified but did not specifically apply").  A failure-to-hire claim obviously depends on the availability of a job opening.  It is not unfair or unduly burdensome to expect a plaintiff to submit an application for that vacancy as a prerequisite for stating a failure-to-hire claim.  In short, we do not believe an employer is obliged to defend its decision not to hire an individual for a position for which she has not specifically applied.[6]

The parties in this case dispute whether there was a vacant position at the relevant time.  Janssen argues that the MPF position was not available to external candidates at the time it received Velez's August 2001 letters.  Velez places heavy emphasis on Janssen's advertisement for the two MPF openings only three days

---

[6] Like the Second Circuit, we recognize the potential for exceptions to this general rule.  See Brown, 163 F.3d at 710 ("[T]he general rule . . . is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement.").

after her rejection letter stated that she would not be considered due to "business needs." Although Janssen has offered explanations for this seeming-contradiction, Velez has raised a sufficient factual dispute to foreclose summary judgment on the issue of a job vacancy when Velez submitted her August letters.

Velez has, nonetheless, failed to make a prima facie showing of an adverse employment action. She stated only that she was "interested in being considered for any position available such as manufacturing supervisor, warehouse supervisor, maintenance supervisor, utilities supervisor, quality engineer, preventive maintenance supervisor or any other position." Such a letter merely expresses interest in a wide range of positions. It is not the application for a discrete, identifiable position required under § 704(a) of Title VII. On that basis alone, the district court properly entered summary judgment for Janssen on Velez's Title VII claim.

## III.

Velez argues that the district court erroneously granted summary judgment for Janssen under Law 115 of the Puerto Rico code. Title VII and Law 115 are largely symmetrical in scope. See, e.g., Salva v. Eagle Global Logistics, __ F. Supp.2d __, 2006 WL 2685109, at *4 (D.P.R. Sept. 18, 2006). Velez argues, however, that even if her Title VII claim were appropriately rejected, her Law 115 claim should survive because the defendant-employer's burden is greater

under that law.  We do not have to address that contention here. We have affirmed summary judgment on her Title VII claim based on the deficiency in her prima facie showing for the adverse employment action element of a retaliation claim.  Thus, the defendant's burden of proof is irrelevant.  Neither party has suggested that the prima facie showing for a Law 115 claim is distinct from that required for a Title VII claim.  Because Velez has not shown that she suffered an adverse employment action under the latter, she has likewise not made such a showing under the former.

We note an arguable alternative ground for decision without deciding its merits.  The language of Law 115 raises the possibility (although not mentioned by either party or the district court) that Velez's claim is not cognizable under Law 115.  The provision under which Velez makes her claim states: "No employer may . . . discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a . . . judicial forum in Puerto Rico . . . ."  P.R. Laws Ann. tit. 29, § 194a(a).  In order to prevail on a claim under Law 115, a plaintiff-employee must show that she engaged in protected activity and that she was thereafter "discriminated against regarding her employment."  Salva,__ F. Supp.2d __, 2006 WL 2685109, at *4.

Title VII, however, explicitly protects both "employees [and] applicants for employment" against retaliatory discrimination.  42 U.S.C. § 2000e-3(a).  Title VII's explicit embrace of applicants appears, therefore, to be broader than Law 115's coverage of employees only.  Nonetheless, we do not explore this potential difference between the two statutes because Velez's claim must be dismissed in any event.  As discussed above, Law 115 requires the same prima facie showing of an "adverse employment action" as Title VII.  Thus, Velez's claim fails, as a matter of law, because she has not applied for a specific and available position.

## IV.

We hold that a plaintiff asserting a Title VII claim of retaliatory discrimination based on a failure-to-hire must, in order to establish an adverse employment action, make a prima facie showing that (1) she applied for a particular position (2) which was vacant and (3) for which she was qualified.  In addition, she must show that she was not hired for that position.  For the reasons discussed above, Velez has not made such a showing here.  Thus, we affirm summary judgment for appellee Janssen on Velez's Title VII and Law 115 claims.

Affirmed.